Judge Wright
delivered the opinion of the court:
The first question claiming our attention in this case is, whether the subscription paper, upon which the suit is founded, affords a legal foundation for the action? It has been repeatedly decided in this state and elsewhere, that promises to pay money for the erection of school and court-houses, churches and bridges, would, the work being undertaken or done, sustain the action of assump.sit. A moral obligatiou is sufficient to support an action on an express promise. 6 Mass. *40; 3 Mass. 483. The subscription we are now called to examine does not rest alone upon the general principle, but may invoke to its aid a positive enactment *51 of the legislature. Section 10 of the act to provide for the internal improvement of the State of Ohio by navigable canals, 23 O. L. 57, expressly authorizes the canal commissioners to make application, in behalf of the state, to Congress, to land-holders, through or near which the canals may be proposed to pass, to public and private bodies politic, and to all the citizens or inhabitants of this or any other of the United States, for grants or ■donations, in land or money, for the 'purpose of aiding in the •construction of said canals, according to the direction of the donors, and to take, to the state, such conveyances as may be •competent to vest in the state a good title in the lands so to be granted.
It has not been disputed, nor even suggested, that the legislative competency in Ohio falls short of determining what shall be esteemed a sufficient consideration, upon which a contract or promise may be enforced in our courts of justice. Unless this competency can be questioned, the enactment referred to is conclusive of the legal efficacy of contracts under it. The contract here is not against good policy or good morals, nor against law,, but in conformity with its express provisions. It is urged, liowevei*, that the statute only contemplates grants of land, and donations of personal property, in presentí, and confers no authority to make contracts for either. We are bound to suppose the general assembly intended to confer power, to effect the only object they had in view. They have employed language too plain to admit any great latitude of construction; language addressed to the public spirit, and the interest of individuals. Yarious routes for canals were' contemplated; and in determining the choice, much depended upon the amount of contributions. Individual contributors would give more or less, according as the route adopted, or other circumstances, might be supposed to enhance the value of their property. Provisions looking to such a state of things were inserted in the law, subjecting the donations to the direction and conditions of the donor. Could a person be expected to give money or land, upon condition the canal should take a certain route, before that route *was settled, and trust to circumstances to obtain a return of the gift, or reconveyance of the land, if another route were selected ? We think the common usual method of doing such things was in the contemplation of the law, the obtaining a promise to give or convey, at an agreed time, upon whatever con *52 dition the giver chose to impose, and the obtaining written evidence of the undertaking. One proposes to give one thousand dollars in a year, if the canal goes through his land. The construction contended for by the defendant’s counsel, would deprive the state of power to avail itself of aid under such a condition. We are unable to perceive any sound reason against the making a valid contract, under the law, to pay on the happening of the condition.
Have the plaintiffs a right to sue on the contract? The declaration is upon a written promise, dated December 6, 1825, “ to pay to the commissioners of the canal fund of the State of Ohio, for the use of said fund,” the sum claimed, “ upon condition that the canal be located on the east side of the Cuyahoga river.” The suit is in the name of Brown, Buckingham, and Perkins, “ as commissioners of the canal fund of the State of Ohio, for the use of said fund.” It is averred that the said B., B., and P. were commissioners of the canal fund, when the money became due, and still are commissioners. At the date of the subscriptions, Trimble was commissioner with Brown and Buckingham; Perkins was appointed in the room of Brown, February 7, 1826. The individuals, therefore, named as plaintiffs were not, in fact, parties to the contract — the paper is not negotiable, and no transfer of it is alleged, and could not properly be received in evidence, in their favor. 6 Mass. 253; 10 Mass. 360; 5 Mass. 491. It is claimed that the fund commissioners are a corporation, with power to sue, and that their names may be rejected as surplusage; and, also, that inasmuch as the defendant has pleaded over to to the action, he can not now object to its form, or the right of the plaintiffs to recover, as they have declared.
Is the defendant precluded, by pleading over, from objecting the inability of the plaintiffs to sue ? In the Mayor, etc., of Stafford v. Bolton, 1 Bos. & Pul. 40, the court held the misdescription of a corporation like a mere misnomer of a ^natural person, plead-able only in abatement, while the non-existence of a plaintiff or corporation was matter in bar, of which the defendant might' avail himself, after pleading over. See also 1 Saund. 340, n. 2; Com. Dig. E, 16. The defendant can only plead nulitiel corporation in bar. Bro. Misnomer, 73. Pleading to the merits has been held by the Supreme Court of the United States to be an admission of the capacity of the plaintiff to sue. 1 Pet. 386. The general issue admits the competency of the plaintiffs to sue, in the *53 corporate capacity in which they have declared. 4 Pet. 501. In that suit, the plaintiffs had described themselves “ a corporation, duly established,” and no individuals were named in the writ or declaration. Upon first view, we were inclined to consider this decision conclusive against the defendant, in this stage of the proceedings, but upon closer examination, we think the case eaily reconciled with the others cited. If in this declaration, only the corporate name of the fund commissioners was set out, and it was .averred they Were a corporation, etc., the general issue might be held to admit its truth, but such is not the case. The individuals named have been treated by the officers of the court, .and the counsel on both sides, as the plaintiffs. Shall we now allow them to strike their names from the record, against their own understanding of the law, and deduce from legal fiction ..an admission that it was not them, but the description they gave themselves, and affixed to their names, the defendant was called into court to answer? The complaintis by B., B., and P., as commissioners of the canal fund, upon an indebtedness to them. We feel constrained to look upon this allegation as the plaintiffs themselves seem to have considered it in their proceedings, as deserip.tive of the persons suing, not as a substantive description of a mere corporative plaintiff, and, therefore, that its truth is not admitted by pleading over.
But are the canal fund commissioners a corporation, empowered to sue as such? It is not necessary in this case to determine, whether,for any purpose, this board of commissioners may be held a quasi corporation. An examination of the acts creating it, without aid from legal subtleties, would impress no one with the idea that the legislature intended*to create a corporation. The object was, to create certain public agents, to perform certain duties for the state, a majority of whom should determine its acts. Power was given to the board, thus created, to borrow money on the credit of the state, to receive and manage the canal fund, to pay interest, and finally, to disburse the fund to the canal commissioners, to pay for a state work, and, for its engagements, the means and faith of the state were pledged. Evidently these commissioners were created to transact the business of the state, solely upon its responsibility. Can it be supposed, for one moment, that capitalists were expected to supply these persons, upon their own individual or corporate liability, with several millions of dollars, to *54 be expended upon the works of another corporation ? If the act creating this board of commissioners confers only corporate powers upon the individuals composing it, does, it not follow that only their corporate means would be held for their engagements? We-may ask, in the forcible language of one of the counsel for the defendant, what single feature of a corporation do they possess? They have no name given them as such, no power of perpetuating their succession, no common seal, no power to make any contracts, “ except in the name, and for the state,” or hold any property upon which execution could be levied, in case of a judgment against them. Mere agents of a corporation, the state, with limited and specified power, for a limited purpose, their acts, dono agreeably to the authority delegated to them, are the acts of the State of Ohio, binding upon the state, not upon the commissioners, either as corporators or individuals. The allegation that the suit is for the use of the canal fund, does not impart to the suit any new vigor. The canal fund is neither a natural body nor a body politic. Can a mere ideal thing be a cestui que use ? The contract in question is neither within the express powers conferred upon the fund commissioners, nor the general scope of .their authority. But the leg^ islature has not left the question to conjecture. Section 10 of the act referred to, 23 Ohio L. 57, imposes the duty of soliciting, and the power of receiving donations, upon an entirely different board, the canal commissioners. This jDOwer, so expressly conferred upon other agents, can not be taken, by implication, *as conferred upon the fund commissioners. The case of Hardin v. Trustees of New Haven, 3 Ohio, 227, is confidently relied upon by the plaintiffs. That was a suit brought by F., B., and P., trustees of New Haven township, upon a township liability. The court say, page 229: “ Statutes creating corporations, usually give them corporate names, and authorize them to sue and be sued by the name given.” The act incorporating townships declared them bodies corporate and politic, capable of suing and being sued, but it does not give them corporate means, nor direct by what name suits shall be carried on, for or against them. The act for the relief of the poor gives the charge of paupers to the overseers of the pool’, at the expense of tho township, and the trustees are empowered to prosecute the necessary action against the trustees of any other township,-etc. In this.law the phrases, “ the township, the overseers of the township. and the trustees of the township,” seem to be promiscuously *55 used as synonymous expressions. The court adjudged that the suit must be against the corporation, and from the whole statute, as the affairs of the township were principally managed by trustees, there was no impropriety in suing the corporation in the name of the trustees of the township, or in rejecting the names of F., B,, and P. as surplusage, it being evidently the intention to sue the township. .Our opinion does not conflict with this decision. There was a corporation expressly vested with power to sue, and the only difficulty was in ascertaining the corporate name. The court held one of those used in the act sufficient, if it showed clearly the suit to be against the corporation. Nor do we interfere with that class of cases where church wardens, school directors, etc., have been holden to possess the right to sue. “ There are many instances in the case of collective bodies of men, coming under one general description, endowed with a corporate capacity, in some particulars expressed, but who have, in no other respect, the capacities incident to a corporation,” and “ where a public office is instituted by the legislature, an implied authority is conferred on the officer, to bring all suits, as incident to his office, which the proper and faithful discharge of his duties require.” 18 Johns. 418. This implied corporate power *to sue, if it may be so described, arises from necessity, when, without a resort to it, there would be a failure of justice, or an inability to attain the end aimed at, in conferring powers on the agent or officer; and in most, if not all these cases, the body or community, for whom the agent or officer acts, is incapable, in law, of maintaining^ a suit. A majority of the court is of opinion, that the fund commissioners are not a corporation for the purpose of sustaining this suit, and that the objection, under the pleadings in this cause may be made now.
It does not follow from this decision, as counsel seem to fear, that the defendant, and all others contracting with the fund commissioners, or the canal commissioners, are altogether exonerated and discharged from their contracts. This suit fails for want of proper parties. Cases are numerous, and of every day’s occurrence, where public officers and agents of corporations make contracts in their own names, which accrue to the benefit of their principals. The affairs of our banking institutions are managed by boards of directors; yet it would hardly be contended that the board, as directors, could sue, upon a contract made with it to pay money to the cashier, or to themselves; or that the cashier could bring such *56 suit. Such a contract would be held the contract of the bank, who alone could sue upon it. Macbeth v. Hardimand, 1 Term, 172; Unwin v. Wolsely, 1 Term, 674, and Hodgson v. Dexter, 1 Cranch, 345, are strong cases of engagements by public agents, nominally in their own names, held to be public contracts. The last was a suit upon a lease for a house, botjveen the plaintiff and Dexter, secretary of war, in which he covenanted for himself, and his successors, and was executed with his signature and seal. Chief Justice Marshall, in giving the opinion of the court (page 263), says: “It is too clear to be controverted, that when a public agent acts in the line of his duty, and by legal authority, his contracts, made on account of the government, are public, and not personal. They accrue to the benefit of, and are obligatory on the government, not the officer.” “The court is unanimously, and clearly of opinion, that this contract was entered into entirely on behalf of the gov-ernmen’t, by a person pi’operly authorized to *make it, and that its obligation is on the government only.” By the act of assembly referred to, empowering the canal commissioners to receive donations, etc., they are expressly required to be in behalf of the state, or to the state. The promise in the subscription paper was to the same effect as if it were a promise to pay into the state treasury. It is to pay to the Canal fund commissioners, for the use of the fund. This fund they arc intrusted with, as the treasurer is with the general funds of the state. The designation of the fund commissioners is but the designation oí the agent to receive the money. The expression does not seem to have been used to discribe the obligee of the contract. Wo are unanimously of opinion, that suits on this and other like contracts, and on contracts with the canal commissioners, may, and should be brought in the name of the state, in whose behalf, and on whose account they were made. 2 Kent’s Com. 492; 2 Esp. 567; 5 Mass. 491; 10 Mass. 327; 15 Johns. 1; 1 Green, 162.
A new trial must be granted, the costs to abide the event of the suit; but we advise the plaintiff to submit to a nonsuit. A non-suit was entered.
Judge Collet dissented from the court as to the corporate powers of the fund commissioners, and the right of the defendant to object to their want of power, after pleading to the suits.