WILLIAM W. COWELL *vs.* JOSEPHINE S. DAGGETT.

A father, not being the legal guardian of his minor daughter, nor having authority to act in her behalf in reference to a legacy to which she was entitled under a will, received from the executor, who was insolvent, a deed of a lot of land, running from the executor to the legatee and intended in part payment of the legacy, and as an unlawful preference. This deed the executor "delivered to him for the legatee;" and he, after reading it, handed it back, with the understanding that the executor should cause it to be recorded; who did so; and the legatee assented to such conveyance, but without knowledge or reasonable cause to believe that the executor was insolvent or in contemplation of insolvency. On the trial of a writ of entry brought by the assignee in insolvency of the executor to recover possession of the land, *Held,* that the fact that the father, at the time of such delivery to him for the legatee, had reasonable cause to believe that the executor was insolvent, did not charge her with his knowledge, or invalidate the conveyance.

WRIT OF ENTRY by the assignee in insolvency of Handel Pond, to recover possession of a lot of land in Wrentham. Writ dated September 1, 1865.   Plea, *nul disseisin.*

The case came before this court on appeal from a judgment for the tenant entered in the superior court on facts which were agreed by the parties substantially as follows :

On May 20, 1856, Pond was duly appointed executor of the will of Jonathan Shepard, the tenant's grandfather.   He never returned an inventory of the estate; but, after paying the testator's debts, there remained real estate worth twenty-seven hundred dollars, and personal property worth about two thousand dollars.   Of this personal property, Pond appropriated to his own use about a thousand dollars, and transferred the remainder to his wife, who was the daughter and residuary legatee of the testator.

By the will, a legacy of one thousand dollars was bequeathed

to the tenant, who was then a minor, payable to her by the executor, with interest from the date of probate of the will, upon her marriage, or upon her attaining full age, which would not be until June 21, 1866.

On June 9, 1865, a large part of the testator's real estate was unsold and in use and occupation of Pond's wife. Shortly before that day one of the sureties on Pond's bond as executor had requested him to secure the legacy to the tenant, so as to avoid that liability on the bond. For the purpose of complying with this request, he on that day, being himself seised in fee, subject to a mortgage for seven hundred dollars, of the premises in dispute, executed a deed of them to the tenant. She had no legal guardian, and remained unmarried. The deed was made without consultation with her or any person acting in her interest or behalf. On the day of its execution, Pond went from Wrentham to Attleborough, where the tenant's father lived, and " delivered it to him for the legatee," saying that he had made it in payment of the legacy, so far as it would go; that he thought that, after satisfying the mortgage, it would be good for about nine hundred dollars of the legacy; that his wife was anxious that the legacy should be paid; that he was advised that he had a right to make this deed, but if it should not be valid the legatee could not lose, as his bondsman was good; and besides, that there was real estate enough remaining to pay the legacy. The tenant's father read the deed, but immediately handed it back to Pond, and it was understood between them that Pond should cause it to be recorded in the Norfolk registry, which he did the next day.

On the afternoon of the day when this transaction occurred between the tenant's father and Pond, the tenant's father told his daughter the particulars of the legacy, of which until then she had no definite knowledge, having heard only that her grandfather had made some provision for her in his will. And he told her that Pond had given to her a deed of a house and land in Wrentham in part payment of the legacy, but did not tell her the details of his conversation with Pond. She replied that she preferred money to a house and land, and her father answered

that she could sell the real estate, if she should wish, and convert it into money. Nothing more was said about the matter hen or afterwards. The tenant "never saw the deed, nor ever had it personally in her possession, and never gave any direc tions about the same, or about said real estate or its manage ment, or about this suit or its conduct, but without objection suffered her father to do in the premises what he thought fit, both before she came of age and since. No discharge of said legacy or receipt on account thereof was at any time given to Pond by the tenant or by any person acting or assuming to act in her behalf."

On June 9, 1865, Pond was insolvent. He filed his petition in insolvency June 24, and on July 6 his estate was duly transferred to the demandant. The tenant's father did not know of Pond's insolvency on June 9, but had reasonable cause to believe that he was insolvent at that time. The tenant herself had no knowledge or reasonable cause to believe that he was insolvent or in contemplation of insolvency on June 9, but knew of his insolvency soon after the date of his petition.

*B. W. Harris & P. E. Tucker*, for the demandant. Pond's conveyance to the tenant was an attempt to prefer her debt and free himself, at the expense of his other creditors, from a claim which would not be barred by his discharge in insolvency. Gen. Sts. *c.* 118, § 79. The delivery of the deed was made to the tenant's father, as her agent. If, by reason of her minority, she did not assent thereto, the delivery was never perfected, and she has no title to the premises. If she did assent thereto, and so perfected the delivery, she became charged with notice of such facts as were within her agent's knowledge. *Hovey* v. *Blanchard*, 13 N. H. 145. *Jennings* v. *Moore*, 2 Vern. 609. *Toulmin* v. *Steere*, 3 Meriv. 210. She is equally charged with such notice if her assent to that delivery is implied by law. She cannot be permitted to avail herself of her father's agency in a part only of the transaction.

*W. Colburn*, for the tenant.

FOSTER, J. "By the common law all persons whatever may be grantees in a deed, because it is supposed to be for their benefit.

But infants, married women and persons of insane memory may disagree to such deeds and waive the estates thereby conveyed to them." Cruise Dig. tit. 32, *c.* 2, § 31. *Concord Bank* v. *Bellis,* 10 Cush. 276.

A. delivery of a deed by the grantor to the register of deeds to be recorded for the use of the grantee, and the grantee's subsequent assent to the same, is a sufficient delivery from the time of such assent. *Hedge* v. *Drew,* 12 Pick. 141. *Thayer* v. *Stark,* 6 Cush. 11. *Shaw* v. *Hayward,* 7 Cush. 170.

In the present case the grantor caused the deed to be recorded. The minor grantee had notice of its execution on the day when it was made. Her assent may be inferred from the fact that the transaction was for her benefit, and from the conversation with her father. He told her that Pond had given her a deed of a house and land in Wrentham in part payment of her legacy. She replied that she preferred money to a house and land; her father then said that if she pleased she could sell the real estate and convert it into money; and nothing more was said on the subject. This, we think, would have been sufficient acquiescence and assent in the case of an adult, and we are satisfied that enough took place on that day to transfer the title to the estate as between grantor and grantee.

Is the transaction voidable in favor of the assignee in insolvency of the grantor as a fraudulent preference contrary to the provisions of the insolvent laws? No doubt, on the part of the grantor, it was intended and given as a preference. But, to be liable to be set aside, it must also have been accepted as such by the grantee, who at the time of receiving the payment or security must have known or had reasonable cause to believe that the grantor was insolvent, or in contemplation of insolvency. This case is before us on an agreed statement, a part of which is that the grantee " had no knowledge or reasonable cause to believe that the grantor was insolvent or in contemplation of insolvency when the deed was delivered." This concludes all inquiry into the circumstances and all inferences from the character of the transaction, unless the grantee was affected by notice to her father, who did know enough to render the transaction voidable

if he was her agent in such a sense that notice to him operated as notice to her. But he was not her legal guardian, and could not have received payment of the legacy on her behalf. She had given him no authority to act for her in obtaining security. The execution of the deed was the voluntary act of the grantor without any communication with either the father of the tenant or herself. The father did not even put the deed on record, but only read it and handed it back to the grantor, by whom it was recorded. It is true that the father was the medium of communication, by whom the tenant learned that the deed had been made for her benefit; but this does not make him her agent, or affect her with notice of the facts he knew. If she had been informed of the deed by the grantor himself, or the conveyancer who drew it, or by the register of deeds, or casually by any third party, or in any other way, it would hardly be claimed that the person who told her was her agent so that the law will intend that she knew everything as to the grantor's pecuniary condition known to her informant. It is impossible for us, on these agreed facts, to treat the question of agency differently because her knowledge was derived from her father.

Notice to her, or knowledge by her of the execution of the deed, may have been necessary to enable her to perfect the delivery by assent. If so, she had the knowledge, and gave the assent. The tenant has obtained a preference over other creditors of an insolvent debtor, but it appears to have been done under such circumstances that she is entitled to retain it; and we cannot strain the facts or alter the rules of law to take it from her. *Judgment for the tenant affirmed.*