## CITY OF SPRINGFIELD vs. SAMUEL HARRIS.

The abutters on a street entered into a contract with the city, which was about to pave it, that if the city would leave standing a row of trees in the middle of the street, and put curb-stones around them for the purpose of protecting them, they would pay the cost of the curb-stones. *Held*, that the contract was legal, and binding on the abutters.

On an issue whether a written contract between a city and an individual was delivered by the latter, evidence that he gave it to an agent with a request to deliver it to the mayor, and that the agent put it into the hands of the mayor, will warrant a finding that it was so delivered as to bind the principal, although the agent testifies that he put it into the mayor's hands only for the purpose of allowing him to inspect it, and with the expectation that he would return it to him; and evidence of declarations and previous propositions of the mayor is inadmissible to defeat the effect of the delivery.

A written proposition to pay for certain work, if the city would do it, was delivered to the city, and the city did the work. *Held*, that this was sufficient evidence of an acceptance by the city of the proposition, and that such acceptance was sufficient consideration for the promise to pay.

Several of the abutters on A. Street in a city signed an agreement to this effect: "Provided the city will place curb-stone around the trees in A. Street, we, the subscribers, agree to pay to the city the cost of the curb-stone so placed opposite our land on our side of the street." *Held*, that the city could maintain an action against one of the signers for the cost of the curb-stones put opposite his land, although it had not put curb-stones opposite the estates of all the signers of the agreement; and that the admission of evidence, at the trial, of the reasons why it did not put curb-stones opposite the estates of all the signers, was immaterial, and afforded the defendant no ground of exception.

In an action by a city against one of the signers of an agreement to pay for curb-stones around an inclosure if the city would lay them, it was contended in defence that the agreement was never delivered to the plaintiffs, and that an agent, to whom the person who had procured the signature of the defendant gave the agreement, put it in the hands of the plaintiffs' mayor merely for his inspection. *Held*, that evidence was admissible in reply, that the defendant said that he expected to pay for the work, until the city used the inclosure for rubbish; and that the person who procured the signatures gave the agreement to the agent for the purpose of its being delivered to the mayor, and would not have given it to him unless he had supposed that he would so deliver it.

CONTRACT on the following instrument, signed by the defendant and eleven others: "Springfield, April 22, 1869. Provided the city will place granite curb-stone around the large trees on North Main Street, for the purpose of protecting them, we, the subscribers, hereby agree to pay to the city the cost of the curb-stone so placed opposite our land on our side of the street." Writ dated May 28, 1870.

At the trial in the superior court, before *Pitman*, J., the plaintiffs' counsel, in his opening, stated that he expected to prove that the defendant with others petitioned the plaintiffs to macadamize

North Main Street, in Springfield, which was very wide and contained a row of large trees along its centre and a road on each side of them ; that there were two plans presented to the plaintiffs for macadamizing the street, one, to cut down the trees and macadamize the whole width of the street, the other, to place granite curb-stones around the trees, for the purpose of protecting them, and macadamize on either side of them ; that the expense of the latter plan exceeded the former by the cost of the curbing around the trees ; that the plaintiffs were about to macadamize the street according to the former plan, when the defendant, together with the others whose names were signed to the agreement declared on, in consideration that the plaintiffs would macadamize the street according to the latter plan, executed and delivered the agreement to the plaintiffs ; that the plaintiffs accepted the agreement, paved the street according to the second plan, and called upon the defendant to pay for the curbing placed opposite his land on his side of the street, but the defendant wholly refused to pay. On this statement the judge ruled that the plaintiffs could not recover ; directed a verdict for the defendant ; and reported the case by consent of the parties for the determination of this court ; if the ruling was right, judgment to be entered on the verdict ; otherwise, the case to stand for trial.

*E. B. Maynard & C. A. Winchester*, for the plaintiffs, cited *Crocket* v. *Boston*, 5 Cush. 182 ; *Foster* v. *Boston*, 22 Pick. 33 ;. *Bell* v. *Boston*, 101 Mass. 506.

*A. L. Soule*, for the defendant. The plaintiffs had no power to make the contract declared on. Gen. Sts. *c*. 18, §§ 9, 10. In determining the laying out and altering of streets they act in a judicial capacity. *Parks* v. *Boston*, 8 Pick. 218. Any determination to lay out or alter a street in consideration of an agreement by an individual to pay the expenses would be void. *Commonwealth* v. *Cambridge*, 7 Mass. 158. *Commonwealth* v. *Sawin*, 2 Pick. 517.

GRAY, J. The improvement of the surface of the street was a mere act of ordinary repair, not requiring any new location or change of grade. The leaving of a row of shade trees in the middle of the highway, and the placing of granite curb-stones

around them, " for the purpose of protecting them," were done by the city at the request of the defendant and other abutters, and in consideration of their promise to pay the expense of such curb-stones opposite their lands, and do not appear to have made the street less fit for public travel. No illegality is shown in the agreement sued on, nor any reason why, having been performed on the part of the city, it should not have been performed on the part of the defendant. *Case to stand for trial.*

At the new trial, before *Brigham*, C. J., it appeared that the trees stood in a line extending along the middle of North Main Street for a distance of about twelve hundred feet, from a point at the north a few feet south of Carew Street, across Holyoke Street and Clinton Street, to a point about two hundred feet south of the south line of the latter street; that North Main Street was thirty-three feet wide between the curbing and the walk on the west side, thirty feet wide between the curbing and the walk on the east side, and ninety-five feet wide from fence to fence; that the defendant's estate was immediately south of Holyoke Street, and was about sixty-six feet wide on North Main Street; that a petition, signed by the defendant and some others of the signers of the instrument declared on, that North Main Street should be macadamized, and granite curbing placed around the large trees on the street for the purpose of protecting them, was presented to the city council, and referred to the committee on streets and sidewalks, which reported that in its opinion the street should be macadamized from Congress Street, which was south of the trees, to Carew Street, and that the trees ought to be protected with suitable curbing, the expense of the curbing to be borne by the abutters, and recommended that the whole matter be referred to the supervisors of highways, with power to act; that the report of the committee was accepted in both branches of the city council, on April 26, 1869; that the plaintiffs did not place granite curb-stones around all the trees referred to in the instrument declared on, but did place such stones around the trees south of Carew Street and north of Holyoke Street, in one inclosure, and around those south of Holyoke Street

and north of Clinton Street, in another inclosure, and did not place any curb-stones around the trees south of Clinton Street, two in number; and that the land of the last signer of the instru ment was south of Clinton Street, and opposite the trees about which no curb-stones were placed.

The city clerk testified that he found the instrument declared on among the papers of his office; that he saw the defendant December 4, 1871, and asked him to pay his bill; and that the defendant said he was short of money but would pay the bill soon, and had made the same promise on the same application previously.

A supervisor of the highways testified that the mayor, since deceased, showed him the instrument declared on; that he never saw it at any other time; and that he thought no curbing would have been set, if the instrument had not been signed; that the supervisors of highways did not put curbing around those of the trees which stood south of Clinton Street, because they thought it would be an impediment to travel to put it there, that if it had been done it would have been an impediment to travel near the head of Clinton Street, and that the largest tree not curbed was somewhat decayed. The defendant objected to the admission of any evidence as to why the curbing was not put around all the trees, or as to the effect of it if it had been placed; but the judge admitted the evidence. The witness further testified that he himself, with the mayor and a third person, were supervisors, and he was also one of the committee on streets and sidewalks; that they met the abutters in reference to the trees, and not putting curbing around all the trees, where it would interfere with travel, and on the subject of cutting some of the trees down. He did not testify that the defendant was present at any of those meetings or hearings.

It was admitted that the instrument was never presented to the city council for acceptance, or in any way; and there was no evidence that it was ever presented to the board of supervisors at any meeting thereof, or that it was accepted by them, or that it was accepted by the plaintiffs, unless acceptance is to be inferred from what the plaintiffs did in placing curb-stones about the part

of the trees referred to, or from the hearings and meetings testified of by the supervisor.

John Clark, called as a witness for the defendant, testified that he obtained several of the signatures on the instrument, and signed it himself; that he told the signers, when getting their signatures, that the instrument would not amount to anything and would not be used, unless all the abutters on the street opposite the line of the trees should sign it; that he found it impossible to get all to sign, and several of them refused to sign when he applied to them; that, six weeks or more after he first had the instrument in his hands to solicit signatures, he was asked by the mayor how the matter was getting on, and replied that it was of no use, and he could not get the signatures of the abutters, and had given it up; that the mayor asked who had refused, and he told him their names; that, about a week later, the mayor meeting him in the street said, "I wish you would bring down that paper and let me see it;" and that in consequence of this request, and in compliance with it, he let the mayor take the instrument declared on. The defendant offered to prove, by this witness, that the instrument was drawn up and circulated for signatures at the suggestion of the mayor, who stated to the witness and others of the abutters on the street opposite the line of trees, that if all the abutters would undertake to pay the cost of the stone for the curbing about the trees, each undertaking to pay the cost of the stone opposite his land on his side of the street, he thought the plaintiffs would lay the stone; that several of the abutters refused to sign, and the witness therefore abandoned the attempt to get the instrument signed by all, and put it away among his old papers at his house, some time before the mayor asked about it, as stated in his testimony. But the judge rejected the offered testimony. It appeared that no person signed the instrument after it went into the possession of the mayor, and that there were several abutters on each side of the street opposite the line of trees, who had never signed it, but that it was signed by abutters on each side.

Peter Patton, a witness called by the plaintiff, testified that he drew up the instrument; that he obtained the signature of the

defendant thereto, and the signatures of all who signed above the defendant, and the signature of the last signer ; that he told the defendant he thought the instrument would not accomplish anything, and the city would not put in the curbing, unless all, or about all the abutters on the street, opposite the line of trees, should sign ; and that the defendant signed the instrument before it went into the hands of Clark.

The defendant testified that Patton brought the instrument to him for signature, saying that, if all the abutters would pay for the curb-stones, the plaintiffs would have them put in ; and that the defendant replied that if all the abutters would pay their proportions he would, and so signed the paper. In this he was contradicted by Patton. He further testified that when he talked with the city clerk he did not know that all the abutters had not signed the instrument ; and that he did not know till the suit was begun that the instrument had ever been given to the mayor. On cross-examination he testified that he saw the curb-stones laid and made no objection ; that he might have heard that some of the abutters had refused to sign ; and that he did not know the state of the paper, made no particular inquiries about it, and supposed they had not all signed.

After the defendant had closed his case, the plaintiffs called Matthew Allis, who was allowed, against the objection of the defendant, to testify that about two months before the trial the defendant told him that he had expected to pay for the curbing, till the city used the inclosure for depositing rubbish and the street railway company put their timber on it. The plaintiffs also recalled Patton, who was allowed, against the objection of the defendant, to testify that he asked Clark if he would give the instrument to the mayor ; that he thought Clark said he would ; and that, if he had not supposed that Clark would give it to the mayor, he would not have given it to Clark. Clark, being recalled, testified that he had no recollection of any request from Patton to him to give the instrument to the mayor. There was no evidence in the case touching the question of the delivery of the instrument to the plaintiffs, except what is stated above.

The defendant asked the judge to rule " that there was no evi-
dence of a delivery to the plaintiffs of the instrument declared
on ; that there was no evidence of acceptance by the plaintiffs of
the proposal contained in the instrument; that the supervisors
of highways had not any power or authority to make any con-
tract with the defendant ; that even if the instrument had been
properly delivered, and the proposal accepted by the plaintiffs,
no claim thereunder arose against the defendant, because the
plaintiffs had not done what the contract called for on their part;
that there was no performance of the contract by the plaintiffs,
because they did not put curbing around all the trees referred to
in the instrument ; that the contract was a joint contract, and
there was no liability on the part of any of the signers unless all
were liable ; that the instrument declared on was signed without
consideration ; and that, if there was any consideration for it, it
failed by the failure of the plaintiffs to perform, on their part,
what the instrument called for."

The judge refused so to rule, and instructed the jury as follows :
" This action may be maintained upon proof, by a preponderance
of evidence, of the fact that the defendant signed the agreement,
that the same was delivered to the plaintiffs, and that the plain-
tiffs caused curbing to be placed around all the trees on North
Main Street in front of the defendant's estate. The possession
by the plaintiffs of the agreement when this action was com-
menced, and its production at the trial by the plaintiffs from
their records, would be *primâ facie* evidence of its delivery to
them, but this evidence would be controlled by evidence that it
came to the possession of the plaintiffs by delivery to the mayor
upon the request of the mayor to inspect it, by a person, one of
its signers, rightfully in the custody, who delivered it to the
mayor merely for the purpose of enabling him to see the names
of the persons who signed it. One of the signers had no author-
ity to direct its delivery to the mayor, so as to affect the rights
of any other signer of it who signed it on condition that it
should not be used or so delivered unless all the abutters on North
Main Street having estates in front of the trees signed it. If
the defendant signed it unconditionally as to the signing of others

of the abutters, or as to its use or delivery of it, and thereupon it was delivered by the person who obtained his signature to the mayor absolutely, it is binding upon the defendant as if he was the only signer of it. The failure of the plaintiffs to place curb-stones around all the trees on North Main Street referred to in the agreement, because the curbing of the trees around which curbing was omitted would tend to affect injuriously the public convenience and safety of North Main Street, or for any other reason, would not be a defence to this action; nor would the fact that all the abutters having land fronting the trees referred to in the agreement did not sign it be a defence, unless the signing of all of them was a condition of the defendant's signing the agreement, and an expectation of such signing by all would not be a condition. If the defendant signed the agreement, without condition or reservation as to its use or delivery if it was not signed by other abutters on North Main Street having land in front of the trees, the person procuring his signing might deliver the agreement to the plaintiffs, and its acceptance by them would cause the defendant to be bound by it as his contract. The delivery of this agreement by the defendant to Patton, after the defendant signed it, if he signed it without reservation or condition as to its future use or delivery to the plaintiffs, authorized Patton to deliver it to the mayor, and if Patton thereupon requested or directed Clark to deliver it to the mayor and afterward Clark put it into the hands of the mayor, these facts would warrant a finding that it was delivered to the plaintiffs with the defendant's consent, and was so delivered as to affect him and bind him as and for a delivery of his contract. This finding would be warranted notwithstanding Clark put the agreement into the hands of the mayor for the purpose alone of affording the mayor an opportunity to inspect it, at the mayor's request, and with the expectation that the mayor, after inspecting it, would return it to him. The delivery of the agreement to the mayor, and the acts of the plaintiffs, as indicated by the records of official proceedings in the case, followed by the curbing of a considerable number of the trees referred to under the agreement, warrant the inference that the plaintiffs accepted the agreement and acted upon it."

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions, which were argued at September term 1872.

*A. L. Soule & E. H. Lathrop*, for the defendant.

*W. L. Smith & E. B. Maynard*, for the plaintiffs.

COLT, J. 1. There was evidence which would warrant the jury in finding that the defendant's agreement was delivered to the officers of the city. Whether the paper was handed to the mayor for inspection only, or was delivered to him by one to whom authority was originally given or whose act was subsequently ratified, was a question of fact upon all the conflicting evidence in the case. The instructions upon this point gave the defendant the benefit of all the evidence in his favor, and were apt and sufficient for the trial.

2. The records and official proceedings of the city, and the curbing actually completed, sufficiently prove that the defendant's proposition was accepted and that the work was done under it. It was not necessary that the city council should accept the proposition by formal vote. The fact that the work was done, so far as necessary to secure the conditions of the defendant's liability, and was done by the authorized agents of the city after the delivery of the agreement, was evidence of an acceptance, and furnished a sufficient consideration for the defendant's promise. *Crocket* v. *Boston*, 5 Cush. 182.

3. The defendant's contract did not require that the city should place curb-stones around all the trees on North Main Street. The contract, interpreted with reference to the nature of the work contemplated, is not a joint contract, but imposes upon each abutter a liability like the well known liability for similar street improvements, by which each pays for the work done opposite his estate. Its terms cannot be construed as requiring that the entire work proposed should be finished, as a condition precedent to the right to recover of any abutter for the work done against his premises. There was no error in the ruling of the court in this respect.

4. The defendant's exceptions to the admission and rejection of evidence cannot be sustained upon the case as shown by this record. The statement of the supervisors as to the reason for not

inclosing the trees at the southern end of the line, and as to the effect which would have been produced by inclosing them, was at most immaterial, as we view this contract, and could not prejudice the defendant. It does not appear that the testimony of the witnesses, who were called by the plaintiff after the defendant's case was in, was not admissible, either in reply, or within the discretion given to the court to regulate the order of proceedings at the trial. The declarations and previous propositions of the mayor, to other parties, were inadmissible, either to explain the meaning of the agreement or to defeat the effect of an authorized delivery of it. *Exceptions overruled*