CALVIN SNOW *vs.* INHABITANTS OF ORLEANS.

·Barnstable. Jan. 21. — March 3,'1879. AMES & SOULE, JJ., absent.

On a writ of entry, brought in 1877, there was evidence that, in 1850, an academy building, which stood on the demanded premises, was repaired by a person who took charge of the academy as a teacher; that, in the following year, the amount expended by him was raised by a subscription divided into shares of a certain amount each, and the amount paid to him; that the shareholders then took possession of the building and maintained a school in it until 1857, the lot being used as a playground; that, in 1859, the shareholders sold the building, to be removed from the premises, and divided the proceeds; that from that time until 1864 the lot remained vacant, unfenced and unused; that in 1864, with money raised by the contributions of neighbors and former pupils, for the purpose, as declared in the subscription paper, of preserving the place for the benefit of the town, the lot was fenced, and planted with trees; that after this until 1877, when the town erected a library building thereon, the lot was kept in repair by the demandant and others, some of whom were the shareholders above referred to; that in 1877, prior to the date of the writ, the demandant procured deeds from some of the shareholders, which deeds were delivered on the land; and that he so acquired a majority of the shares. *Held,* that there was sufficient evidence to warrant a finding that the demandant had not acquired a title by disseisin. *Held, also,* that the subscription paper of 1864, being signed by the demandant's grantors, among others, was admissible to show that they did not claim title to the land at that time. *Held, also,* that evidence that a person not a subscriber to the subscription paper asked the demandant's permission to make the contemplated improvements was inadmissible in favor of the demandant.

A., purporting to act as agent of the proprietors of an academy, made a deed in which he was so named as grantor, conveying "the academy with the fence around said building." The deed contained personal covenants of warranty on the part of A., and was signed and sealed by him in his own name. *Held,* that the deed was the deed of A., that it conveyed the land about the building, and used in connection with it, as well as the building itself; and that the construction of the instrument was for the court.

On the issue whether a deed to a town of a lot of land, conveyed on condition that a library building should be erected upon it, had been delivered to, and accepted by, the town, there was evidence that the deed after being signed was left with the grantor; that it was acknowledged by him about a month afterwards, and

recorded twelve days after the acknowledgment; that the town voted to erect the building on the land, and a building committee, appointed by the town, soon after began and have since completed the library building. *Held*, that the evidence was sufficient to warrant a finding that the deed had been so delivered and accepted. *Held, also,* that evidence that the deed was found in the grantor's house, after his death, and that the selectmen of the town had no knowledge of any delivery, was not conclusive in law to overcome the other evidence.

If, when a deed of a person disseised is given, the grantee is in possession, or if the d·sseisor is then in possession and afterwards abandons it, and the grantee takes possession, the deed conveys a good title.

COLT, J.   This is a writ of entry, brought in May 1877, to recover a small triangular lot in Orleans, bounded on all sides by the highway.   In 1850, an academy building stood upon it, which in that year was raised up, repaired and improved by one Otis, who then took charge of it as a teacher, and remained in charge until some time in the following year.   Otis had no title to the land, and when he went away, the amount expended by him in repairs was raised by a subscription, divided into thirty shares of ten dollars each, and the money paid over to him.   He gave no written conveyance of any interest in the land or building to any one, but the shareholders took possession of the academy, and maintained a school in it until 1857, the lot being used for a playground.   In 1859, they sold the building, to be removed from the premises, for $200, and divided the proceeds. From that time to 1864, the lot remained vacant, unfenced and unused.   In that year it was fenced, planted with ornamental trees, and furnished with a flagstaff.   This was done with money raised by the contributions of neighbors and former pupils of the academy, in token, as they declared, of their interest in and love for an institution which had been of such lasting benefit; and for the purpose of preserving the place for the benefit of the town.   After this, and until the library building was erected by the town in 1877, the lot was kept in order by the demandant and others, some of whom were shareholders, so called, in the money raised to pay Otis.

The demandant was one of the original shareholders, and at the trial claimed to be the owner of a majority of the shares. He produced deeds from Seabury and Snow, two other shareholders, dated in March and April 1877, which were delivered on the premises.   But his right to the land depends upon his having

acquired title by his own adverse possession and the possession of those whose rights he has obtained since 1857, and he claimed no other title.

The tenant claimed the premises under a deed dated in 1820 from Timothy Doane to John Doane, who by deed executed February 28, 1877, acknowledged in March, and recorded in April of the same year, conveyed the same to the town, upon the express condition, that the building in which Snow's library was to be deposited and kept should be erected thereon. The tenant also, for the purpose of showing title in John Doane, put in a deed to him from Sparrow Horton, dated in 1841.

Against this title by deed in the tenant, the jury must have found that the demandant had acquired no title by disseisin; and there was abundant evidence to justify this finding, on the ground that the demandant had not shown an adverse, exclusive and uninterrupted possession for such time as to defeat the record title of the tenant.

We find nothing, in the rulings and instructions given at the trial, now open to the demandant's exceptions.

The subscription papers of 1864 and 1865, signed by Seabury and Snow, were properly admitted as showing that the relation of those persons under whom the demandant claimed was not that of parties claiming title to the land at that time. And the demandant's offer to prove that a person not a subscriber to the fund asked his permission to make the contemplated improvements, was properly refused, as an offer to prove the act of a mere stranger.

The deed of Sparrow Horton to John Doane in 1841 * does

---

* This deed was as follows: "Know all men by these presents that I Sparrow Horton, of Orleans in the county of Barnstable, yeoman, agent of the proprietors of the Orleans academy, for and in consideration of the sum two hundred and twenty dollars to me in hand well and truly paid at or before the signing, sealing and delivery of these presents by John Doane of said Orleans, attorney at law, the receipt whereof I the said Sparrow Horton do hereby acknowledge, have granted and sold and by these presents do grant, bargain and sell unto the said John Doane his heirs and assigns forever, the academy situated in said Orleans near the Methodist meeting-house with the fence around said building, with all the privileges and appurtenances to the said academy building, which said academy I hereby convey by virtue of a vote of said proprietors passed at a meeting at said academy on the tenth day of

not appear to have been improperly admitted in evidence; for although he describes himself as agent of the proprietors of the Orleans academy, yet the deed is sealed with his own seal, and he binds himself and his heirs by the covenants contained in it. It does not appear what title Horton had, and the judge properly ruled that the deed was sufficient in form to convey real estate, and would pass the title of Horton, if he had any, to the academy building, as well as the fence, and the land enclosed by it. It is within those cases where the grant of a house, a barn, a shop, a mill, is held to carry a title to the land under it and necessary to its enjoyment and use. *Greenwood* v. *Murdock*, 9 Gray, 20. Horton is estopped by his covenants at least from claiming any title as against his grantee. *Sumner* v. *Williams*, 8 Mass. 162. *Whiting* v. *Dewey*, 15 Pick. 433. It was not necessary for the tenant to prove that Horton had title to the land, in order to make a recorded deed from him *prima facie* evidence. There was no evidence outside the deed, arising from its application to the subject-matter, which had any bearing on the grantor's intention, and the judge properly ruled that the intention of the parties was to be determined by the contents of the deed only.

There was evidence to show a delivery of John Doane's deed to the town, before the commencement of this action, which was properly submitted to the jury. Delivery is presumed when a deed, executed in presence of a witness, and recorded, is found

---

January last past. To have and to hold the said granted and bargained academy and appurtenances to the said John Doane his heirs, executors, administrators or assigns, to his own use, proper benefit and behoof forever. And I the said Sparrow Horton do avouch said proprietors to be the true and lawful owners of the said academy; and have in me full power, good right and lawful authority to dispose of the said academy in manner as aforesaid and I do for myself my heirs, executors and administrators hereby covenant and agree to warrant and defend the said academy, as agent as aforesaid, against the lawful claims and demands of all persons whatsoever unto him the said John Doane, his heirs, executors and administrators or assigns. In witness whereof, I the said Sparrow Horton as agent as aforesaid have hereunto set my hand and seal this twentieth day of February in the year of our Lord one thousand eight hundred and forty one.

Sparrow Horton. [Seal.]

Signed, sealed, and delivered in presence of
David Atwood.

in the hands of the grantee. *Rotch's Wharf Co.* v. *Judd*, 108 Mass. 224. *Moore* v. *Hazelton*, 9 Allen, 102. In the case at bar, the subscribing witness testified that the deed was not delivered in his presence, but was left with the grantor. The deed dated February 28, 1877, was written by Thomas Doane, who at a meeting held on the fifth of the same month had been appointed one of a committee of the town for building the library building upon this lot of land. It was acknowledged March 23, and recorded April 4, of the same year. In the month last named, the building committee began, and have since completed, the erection of the library building on the premises. There was evidence in this of the assent of the town, by its committee, to the delivery and recording of the deed. A delivery to a register of deeds for the use of the grantee, followed by his subsequent assent, is a good delivery; *Hedge* v. *Drew*, 12 Pick. 141, 145; *Cowell* v. *Daggett*, 97 Mass. 434; even though the assent be not given until after the deed has been lost or stolen. *Powers* v. *Russell*, 13 Pick. 69. *Molineux* v. *Coburn*, 6 Gray, 124. The fact that the selectmen of the town found the deed in the grantor's house, and had no knowledge of its previous delivery, is not conclusive in law to overcome the other evidence of such delivery.

There was evidence that the town had accepted the condition contained in the deed. It had voted to erect the building on the land before the deed was made, and, after the deed was made and recorded, erected it there, by their building committee, acting under the authority given. *Springfield* v. *Harris*, 107 Mass. 532.

As to the point that Doane was disseised, and could convey no title to the town, the rule is that the deed of a disseisee conveys no title, which can be enforced in the name of the grantee, against the disseisor, but it goes no further. If the disseisor abandons his possession, and the grantee enters and occupies, and especially if the grantee is in possession when the deed is made, the latter acquires an indefeasible title. *McMahon* v. *Bowe*, 114 Mass. 140. *Farnum* v. *Peterson*, 111 Mass. 148.

*Exceptions overruled.*

*J. M. Day & H. P. Harriman*, for the demandant.

*G. Marston*, for the tenant.