## SUBSCRIPTION FOR ROAD IMPROVEMENT.

[Circuit Court of Lucas County.]

PHILIP HASSENZAHL ET AL V. WILLIAM BEVINS.

Decided, April, 1902.

*Road—Built Under the Two Mile Assessment Act—Subscription by One Whose Lands are Benefited—But are Beyond the Jurisdiction of the Commissioners—Do Not Lack Mutuality After the Work is Done—And Can Be Enforced.*

1. The necessity and utility of a road improvement depend in a measure upon its cost, and if the county commissioners can reduce the cost by accepting subscriptions from property owners beyond their jurisdiction, whose lands will be benefited by the improvement, they are justified in taking such subscriptions into consideration in deciding the question of utility.
2. The promise of such a subscriber to pay does not lack mutuality after the commissioners have made the improvement.
3. When, therefore, a road built under the two-mile assessment law is carried to the state line in consideration of property owners over the line whose property is benefited, subscribing a specified amount toward the cost of the improvement, such subscriptions are collectable at law, in a suit by the commissioners after the work has been completed.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is a proceeding in error from the court of common pleas of this county. In the court below a general demurrer to an amended petition was sustained, and the plaintiffs not desiring to plead further, judgment was entered dismissing the same. To that judgment they prosecute error here. The plaintiffs below and in this court are the county commissioners of Lucas county.

The suit is upon an alleged undertaking by the defendant, William Bevins, to contribute toward the expenses of constructing a certain macadamized road, or the macadamizing or improving of a certain road under the two mile assessment law (Sections 4831, Revised Statutes, *et seq.*) It appears from the averments of the petition that in the improvement of a certain public

road called Lewis avenue, extending from the city limits at a certain point to the state line between the states of Ohio and Michigan, a distance of perhaps two miles and a half from West Toledo, northeasterly to the state line between the state of Ohio and Michigan, was petitioned for under this statute; that the viewers, who were required under the statute to report whether in their opinion the improvement was a necessity, reported to the commissioners that it was not enough of a necessity to justify extending it to the Michigan line at the expense of landowners in Ohio or in Lucas county; but that if the owners of lands in Michigan whose lands would be especially benefited by the improvement would contribute $1,500 toward the expense, then the improvement might be deemed of sufficient necessity to justify the expense falling upon the property owners in this county. Now the commissioners are required to say whether or not the road petitioned for is of public utility, or whether public utility requires the improvement, and the commissioners were unwilling to find that public utility required the improvement at the sole expense of property owners in Lucas county. Perhaps they were not authorized to so find, except upon a report by the viewers in favor of the road, finding that it was a necessity.

At all events, in pursuance of this recommendation of the viewers, the commissioners and all persons interested in the improvement got together and it was arranged and agreed between them that if the property owners in Michigan would pay $1,500 toward the improvement, it would be carried forward; otherwise, it would not. It was perhaps contemplated that it would be carried forward to within about half a mile of the Michigan line in the event the Michigan parties did not contribute. Certain persons interested agreed that they would procure contributions from Michigan property owners, whose property was especially benefited, to the amount of $1,500, and that they themselves would be bound for this $1,500, and it appears that thereupon they took agreements or promises to pay from the parties in Michigan, one of whom was Mr. Bevins, who owned a piece of land close to the state line and cornering upon this proposed improvement, to pay certain amounts towards the cost and expense on this improvement, the promise of Mr. Bevins being to

pay $100. When these promised contributions amounted to
$1,500, the viewers reported that they found that the improve-
ment was a necessity, and the commissioners then found that
public utility required the improvement, and they proceeded to
follow the directions of the statute and to make the improvement.

Now this suit is against Mr. Bevins upon his promise to pay
$100 toward this improvement. His promise was not made di-
rectly to the commissioners; but it is conceded on all hands that
the arrangement amounted practically to an agreement that
Bevins should pay the commissioners of Lucas county $100 to-
ward this improvement. The amended petition so sets it up and
it will be so considered.

Counsel for defendant in error urges, and his contention was
sustained by the court of common pleas, that this agreement can
not be enforced for several reasons: (1) He says it is without
consideration; (2) That it lacks mutuality, that is to say, it was
not enforceable against the commissioners, therefore, it can not
be enforced against him, which is only another phase or branch
of the question of consideration; and, (3) He urges with great
earnestness as has chief ground of defense that the commissioners
being unauthorized, either expressly or by necessary implication,
to enter into a contract of this kind, and it being against public
policy, that, therefore, it can not be enforced.

We find no express authority in the statute for the com-
missioners to enter into a contract or arrangement of this char-
acter. Neither do we find that it is given by clear implication
of law, that is to say, that it is such an act as may be necessary
to carry out the powers expressly conferred upon the com-
missioners or to enable the commissioners to perform the duties
expressly enjoined upon them.

But if it be conceded that the commissioners had none of these
powers, still we think it does not follow that the board can not
enforce this contract. We think that there are other principles
that have application and influence in a case where a contract
has been fully performed upon the one side and the party resist-
ing performance upon his part has received and is enjoying the
fruits of the performance of the other party.

Before going to that I will say briefly that it is not apparent to us that this contract is without consideration. It seems to us very clear that it is supported by a good and valuable consideration; that is to say, relying upon the averments of the amended petition, which sets forth that these lands owned by the defendant were outside of the jurisdictional limits of the commissioners and could not be reached or affected by any assessment that they might make, but that they were lying contiguous to this improvement; that the improvement was a special benefit to these lands; and it was on that account the defendant made his promise to contribute toward the cost of the improvement. We think that that states a valuable consideration.

As to the contention that there is a want of mutuality, because the contract, while executory, could not be found against the commissioners because they could not be compelled by Mr. Bevins or others in Michigan to build the road, we are of the opinion that that defense or objection can not be interposed by Mr. Bevins, after performance by the commissioners. I will read a paragraph on this subject from Parsons on Contracts (6th Ed.), page 447:

"A promise is a good consideration for a promise. And it is so previous to performance and without performance. As if one promises to become a partner in a firm, and another promises to receive him into the firm, both of these promises are binding, each being a sufficient consideration for the other. So a promise by a seller to refund in case of deficiency in the thing sold is a good consideration for a promise to pay for any excess therein. If one promises to teach a certain trade, this is a consideration for a promise to remain with the party a certain length of time to learn, and serve him during that time; but, without such promise to teach, the promise to remain and serve, though it be made in expectation of instruction is void. The reason of this is, that a promise is not a good consideration for a promise unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement.

"This has been doubted, from the seeming want of mutuality in many cases of contract. As where one promises to see another paid, if he will sell goods to a third person; or promises to give up a certain sum if another will deliver up certain documents or securities, or if he will forbear a demand, or suspend

legal proceedings or the like.    Here it is said that the party making the promise is bound, while the other party is at liberty to do anything or nothing.    But this is a mistake.    The party making the promise is bound to nothing until the promisee within a reasonable time engages to do, or else begins to do, the thing which is the condition of the first promise.

"Until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and, therefore, no consideration for it.    But after an engagement on the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise with entire mutuality of obligation.    So, if the promisee begins to do the thing, in a way which binds him to complete it, here is also a mutuality of obligation.    But if without any promise whatever, the promisee does the thing required, then the promisor is bound on another ground.    The thing done is itself a sufficient and a completed consideration; and the original promise to do something, if the other party would do something, is a continuing promise until that other party does the thing required of him."

Applying these principles, we think it can not be said the contract lacks mutuality, in the sense that the term mutuality is used here, after there has been full performance upon the one side.

It is suggested that the commissioners are not only without authority to sue upon this undertaking, but that there is no direction in the statute as to the use or disposition that shall or may be made of the funds, after they are recovered, if there should be a recovery, and that, for this reason, there arises an objection to the commissioners going forward with the suit; the inference being, we take it, that if they recover, there being no other place to put the money, they might put it in their own pockets.    But Section 845, Revised Statutes, provides that:

"The board of commissioners shall be capable of suing and being sued, pleading and being impleaded in any court of judicature, and of bringing, maintaining and defending all suits    *    *    * and the money so recovered in any case shall be by them paid into the treasury of the county, and they shall take the treasurer's receipt therefor and file the same with the auditor of the county."

Now we come to the consideration of the question which has been most argued by counsel, and to which the most attention has been given in their respective briefs; and that is, whether, admitting that the commissioners are without express authority to enter into this contract; admitting that they may not have sufficient authority, express or implied, so that they could enforce the contract, if entirely executory, and that it can not be enforced against them, the promise of the persons who agreed to contribute to this improvement may be enforced, since the commissioners have performed and since the parties promising enjoy the benefits which they sought, and on account of which they made the promise.

We can not find that there is anything immoral in the promise on the part of the commissioners to carry forward this improvement, if certain contributions are made by others than those who can be required to contribute. Neither can we find that entering into an arrangement of this character is expressly prohibited; and these facts should be born in mind in considering the authorities bearing upon the right of public officers to enforce contracts that they are not in the first instance authorized to enter into. There are certain contracts, which are expressly prohibited, or which are immoral, and clearly against public policy, that are therefore absolutely void. This we do not think was a contract of that character.

It is said that if this improvement was a public necessity, the viewers were bound to say so, and if it was not a public necessity, they were bound to say so, and the question of whether or not it was a public necessity was not to be determined, or their decision upon that question was not to be influenced, by promises of the parties who could not be compelled to contribute toward the cost of the improvement.

But we think that there is some discretion vested in the viewers who are called upon to say whether this will be a public necessity, and that some discretion is vested in the commissioners to say whether or not it will be of public utility, that these terms are somewhat flexible, and are not to be regarded with the strictness contended for by counsel for defendant in error. The public necessity or public utility may depend somewhat upon

the cost of the thing, and the real question is whether the improvement is of sufficient use and benefit to the parties who will be called upon to pay for it to justify its being constructed; whether it is of sufficient public necessity and public utility to justify laying the cost of it upon the property within two miles of the improvement; and if this cost or expense can be reduced by other contributions, we think that is a fair and proper matter for the commissioners to take into consideration in passing upon the question of the public utility; and that these contributions are not such as may be said to influence the officers improperly in the discharge of their official duty.  We think it is a proper influence, and proper to be considered by the commissioners.

There is one case in point, and but one, so far as we can find, in support of the contention of counsel for defendant in error, and that he has cited, to-wit, the case of *Commissioners* v. *Jones,* *Breese* (Ill.), 237.   The gist of it is given in the syllabus:

"An agreement to pay the County Commissioners of Randolph County a certain sum of money provided they will build a court house on a particular lot, is not binding for want of mutuality, although they do build the court house on the lot designated, the obligation to pay and to build not being reciprocal.

"A promise to pay the county commissioners to do an act which they are required to do by law is against public policy, and, therefore, void.

"The county commissioners of a county have no power to contract only as a court."

In that case the act required them to build a court house, although the act did not require them to build the court house in any particular location or upon any particular lot; the promise to pay was what induced them to build the court house upon a particular lot.   Now that was held to have been lacking in mutuality, in disregard of and against public policy, and, therefore, void.

We are not satisfied with the reasoning or conclusions of the learned judge who announced the opinion, and we think it is against the weight of authority; indeed, we find numerous authorities in support of the other doctrine, and this, as I have said, is the only authority running in this way.   The opinion

was by Justice Smith. The court was composed of four judges, Wilson, Brown, Lockwood and Smith. Wilson concurs in the decision; but says his opinion is founded upon a single objection "that it does not appear that the contract upon which suit is brought, was entered into by the county commissioners as a court; it is only in that character they are capable of contracting." So he does not concur in the opinion as to the contract being against public policy and lacking mutuality. It is said that Justice Lockwood gave no opinion; we presume Justice Brown concurred. It is quite an old decision, having been announced in 1827.

Counsel for plaintiff in error did not seem to get hold of the line of decisions on this question which sustain his contention; but we have discovered a number. Some of them are mentioned in 1 Dillon Municipal Corporations (4th Ed.), 458. In this section the author has this to say upon this subject:

"So, a promise to pay a public corporation, or its agents, a premium for doing their duty is illegal and void; and a contract will not be sustained which tends to restrain or control the unbiased judgment of public officers. But a promise by individuals to pay a portion of the expenses of public improvements does not necessarily fall within this principle, and such promise is not void as being against public policy; and if the promisors have a peculiar and local interest in the improvement, their promise is not void for want of consideration, and may be enforced against them."

A number of authorities are cited, some of which I desire to refer to briefly, the first being the case of *Townsend* v. *Hoyle,* 20 Conn., 1. Reading from the syllabus:

"Where sundry proprietors of lots fronting on a strip of land, which have been thrown open and occupied as a highway or street in the city of N. H., to a small part of which G claimed a subsisting and exclusive title signed a writing addressed to the city authorities, requesting them to lay out such street according to law, and assess the damages, which the applicants thereby agreed to pay to the city treasurer; and this request having been complied with, A, describing himself as city treasurer, brought an action, founded on the writing, to recover such damages, it was held that, as the promise was neither made with A nor on his account the action was not sustainable." (Not as to A.).

"Where it was urged, as a further ground of defense to such action, that the undertaking of the defendants was void, for want of consideration, and as being against the policy of the law, it was held, that as the defendant had a peculiar and local interest in the granting of their request beyond that which they had in common with other citizens, they might legally bind themselves to indemnify the city."

Then, on page 6, Judge Ellsworth says:

"Then as to consideration.  The defendants are not only benefited in common with other citizens, but obviously they had a peculiar and local interest, and well might obligate themselves to indemnify the city for assuming the burthens and responsibilities of a new public highway.

"This is all the determination the case calls for; but we must not be considered as assenting to the proposition, that a promise by individuals to pay a part of the expenses of public improvements, ordered by public authority, is of course illegal and void.  We think the amount of a public burthen, or the cost to the public of an improvement, may properly enough enter into the question of expediency or necessity.  A canal, a railroad, a bridge, a new street, a public square, or a sewer is called for. If made in one way, or in one place, it will be much better for the public, though more expensive; but individuals, especially benefited, stand ready, by giving their land, their money, or their labor, to meet the extra expense.  Will these promises be void, as being without consideration or against public policy?  We think not."

To the same effect is a case in *Springfield* v. *Harris*, 107 Mass., 532; another in *Stilson* v. *Lawrence County Commissioners*, 52 Ind., 213; another, *State* v. *Johnson*, 52 Ind., 197.  The case at page 197 contains a very full discussion of the question, and cites a great many authorities.  It will not be profitable to read these now, but we call especial attention to it as being a satisfactory case.  Among others cited there is *Commissioners of Canal Fund* v. *Perry*, 5 Ohio, 56, 57, 58.  It is there held that "undertakings by written subscription to contribute money or other property, in aid of public works, are valid contracts that may be enforced in courts of justice."  In that case there was a statute authorizing such contributions, so that the court was enabled to say and did say that the subscription they were called upon to examine did not rest alone upon the general principle

that such contracts were enforceable and were not against public policy, but the court expressly approved of the general principle. The decision is by Judge Wright. In the first paragraph of the opinion he uses this language:

"The first question claiming our attention in this case is: Whether the subscription paper, upon which the suit is founded, affords a legal foundation for the action? It has been repeatedly decided in this state and elsewhere, that promises to pay money for the erection of school and court houses, churches and bridges would, the work being undertaken or done, sustain the action of assumpsit. A moral obligation is sufficient to support an action on an express promise." Citing cases in Massachusetts.

These authorities we think fully sustain the position of counsel for plaintiff in error. We are not given the benefit of the opinion of the court below; there seems to have been no formal opinion, and it is apparent that the court below did not have before him these authorities to which I have just referred.

The judgment of the court below upon the demurrer will be reversed and the cause remanded to be proceeded with according to law.