Phillips *v.* Demoss et al.

JOHN PHILLIPS, Appellant, *v.* PETER DEMOSS et al., Appellees.

APPEAL FROM ROCK ISLAND.

Where lands are sold upon execution issued upon a judgment, and the judgment debtor fails to redeem within twelve months from the sale, and thereupon confesses judgment in favor of another creditor, for the express purpose of enabling such judgment creditor to redeem within fifteen months, it is not fraudulent as against the purchaser; and such judgment creditor has the right to redeem under the statute. The purchaser at such a sale acquires no title, either legal or equitable, but the right to his redemption money, if redeemed by the judgment debtor within twelve, or by a judgment creditor within fifteen months, or if not so redeemed, then to the sheriff's deed.

And where a creditor first obtained his judgment before a justice of the peace, and issued execution, which was returned *nulla bona* by the constable, though the defendant had sufficient personal property to satisfy such execution, which was known to both the creditor and the constable; and thereupon the creditor filed a transcript of said judgment in the circuit clerk's office, and caused execution to be issued thereon from the circuit court, by virtue of which he redeemed the lands previously sold, as a judgment creditor :—

*Held*, that the constable's false return to his execution did not vitiate the redemption so made, though the constable might be liable to the party injured for a false return.

*Held*, also, that a creditor was not bound to obtain his judgment within the

twelve months, in order to have the right to redeem; but he could obtain his judgment at any time before the expiration of the fifteen months.

THIS was a suit in chancery, at the May term, 1853, of the Rock Island Circuit Court, WEADE, Judge. The substance of the bill appears in the opinion of the court. There was a demurrer in the court below to the bill, and sustained, and the bill dismissed, and the complainant appealed.

N. H. PURPLE, for plaintiff in error.

J. MANNING, for defendants in error.

CATON, J. At the October term, 1850, Woods, Christy & Co. obtained a judgment against S. R. Drury and Isaiah Drury, upon which an execution was issued, and levied upon the undivided five eighths of north-east quarter of section five; also the north half of the east half of north-east quarter of section five; also the undivided eighth part of north-east quarter of section five; also the south-east quarter of section six; also the south half of section nineteen; also the east half of north-west quarter of section twenty, and the north-east half of section twenty; all in town sixteen, north range five, west of fourth meridian; which premises were sold to one of the plaintiffs in the execution, on the 31st of December, 1850.

On the 31st of February, 1852, the purchaser assigned the certificate of purchase to the complainant, who, after the expiration of fifteen months from the day of sale, demanded a deed of the sheriff, who refused to execute it. The premises designated in the first, second, and fourth descriptions above given, belonged to S. R. Drury, and the balance to Isaiah Drury.

On the 19th of February, 1852, Demoss obtained a judgment before a justice of the peace, against the Drurys, by confession, on a promissory note made by them, dated February 10th, 1852. On the 12th of March, 1852, the justice issued an execution on the judgment, and placed it in the hands of a constable, who, on the same day, returned the execution unsatisfied. On the 17th of March, 1852, a transcript of the justice's judgment was filed in the circuit clerk's office, and, on the same day, an execution was issued from the office of the clerk of the circuit court, which was immediately levied upon the above-described property. Demoss then redeemed from the sale under the first execution, by paying the necessary amount of redemption money, and taking from the sheriff a certificate of redemption. The sheriff then again sold the premises under the last execution, when

Demoss bid the amount of the redemption money, with interest, and no more, and on that bid the premises were struck off to him.

The bill charges, that the last judgment was fraudulently confessed by the defendants, " for the sole purpose of creating a judgment creditor, by whom they could effect a redemption of their lands."

At the time of the return of the execution, issued by the justice, unsatisfied, the defendants had personal property, out of which the amount of that judgment might have been made, which was well known to both the constable and Demoss.

At the November term, 1851, of the circuit court, Guyre, for the use of Phillips, obtained a judgment against S. R. Drury and three others; upon which Demoss, claiming to be the assignee of the judgment, caused an execution to be issued, which was levied upon the same property, and upon which it was again sold on the 24th of April, 1852, to Demoss, as a judgment creditor, for the amount of the redemption money and costs.

It is unnecessary to give the subsequent statements of the bill, showing how the premises have been since disposed of.

We will first consider the question of fraud as set up in the bill. The substance of that charge is, that the first judgment, which was recovered by Demoss against the Drurys, was confessed by them upon a promissory note, which they had executed; and that it was confessed for the purpose of enabling them to redeem the premises from the first sale. The statute says, that " any judgment creditor " shall have the right to redeem from the first sale. In this case, there is no question that Demoss was such judgment creditor; nor is any question made, that as such he did redeem. He exercised then but his legal right. There is no pretence that the debt for which the judgment was confessed was not justly due and owing. But, then, it was confessed for the purpose of creating a judgment, under which a redemption might be made. Does that render it either unlawful or inequitable? Does it violate any of the legal or equitable rights of the first purchaser? We think not. He acquired the alternative right by that first purchase, either to receive the redemption money, which might be paid to the sheriff by the judgment debtors, should they redeem within twelve months, or which might be paid by any junior judgment creditor after the expiration of the twelve months, and before the expiration of fifteen months; or, in case no such redemption should be made either by the judgment debtors or by a judgment creditor, then to a sheriff's deed. By his purchase he

acquired no title to the land, either legal or equitable. His right to the land was no higher or more sacred than it was to the redemption money. When he purchased, knowing that he must either get his purchase-money back again, with ten per cent. upon it, within fifteen months, or get the land, he was aware that others, and not himself, had the right to say which he should take. This was the alternative character of his investment. He knew that either the judgment debtor or any junior judgment creditor might determine that he should take the redemption money instead of the land, and by such determination he was bound by the terms of the law under which he purchased. In view of this he made his bids. The policy of the law is to encourage these redemptions, rather than to suppress them. It was said by this court, in the case of Swezy *v.* Chandler, 11 Illinois, 449: " The object of the legislature, in allowing judgment creditors to redeem, was to prevent a sacrifice of the defendant's estate, and to make it pay as many of his debts as possible." If this be the policy of the law, it is but carrying out its purposes, for the debtor to confess a judgment for an honest debt which he owes, for the express purpose of enabling his creditor to redeem, with the hope of realizing more at a second sale, and thus secure a further payment of his debts. The statute holds out no inducements for a speculation at a sheriff's sale, beyond ten per cent. for the use of the purchase-money, and the purchaser can set up no equitable claim beyond that where the redemption is made according to the provisions of the statute. If the judgment under which the redemption was made had been confessed when no debt was due, the case would be widely different, and quite another question would be presented; but that is not pretended. On the contrary, the bill shows that it was on a note executed by the judgment debtors, and there is not an intimation that the note was not *bonâ fide* due and owing. It is also averred, that they confessed the judgment for the purpose of enabling themselves to redeem, after the time within which they had a right to redeem. If such was their purpose, it is not perceived how that should have prejudiced the rights of the judgment creditor. No matter what their motive was, his judgment was legal and valid, and he had a right to enforce it in any legal mode. If they did intend to redeem under this judgment, that intention does not seem to have been carried out. The bill shows that the redemption was made by Demoss; and there is not even a pretence but that the redemption money belonged to him. If the constable's return of *nulla bona* was false, he may be liable to the injured party for a false return.

35 *

There was another objection made upon the argument which we may notice. It was said, that in order to entitle a judgment creditor to redeem, he should have a judgment either at the time of the sale from which he redeems, or at least before the expiration of the twelve months, within which the judgment debtor may redeem. The statute does not say so; but it says, that any judgment debtor may redeem. He may get his judgment the last hour of the fifteen months; and he is as much within both the letter and intention of the statute as if it were of a year's standing.

It is hardly necessary to say, that, under the second judgment, Demoss could not redeem lands which had been sold on the former judgment as the separate property of J. Drury, who was no party to the last judgment. Under this last judgment, only the lands which had belonged to S. R. Drury could be redeemed from the former sale. But as the right of Demoss to redeem under the judgment which had been confessed by both the judgment debtors, authorized him to redeem all the lands which he did redeem, it is quite unnecessary to discuss the question, whether the second judgment gave him any right whatever to redeem. We think the sheriff was not bound to make a deed to the assignees of the purchaser at the first sale, and that the demurrer to the bill was properly sustained.

*Decree affirmed.*