(January 12, 1920.)

JAMES MUCKLE, Respondent, v. WALTER H. HILL,
Appellant.

[187 Pac. 943.]

Mortgages — Foreclosure — Description — Reformation — Findings
—Attorney Fees.

1. A description of property in a mortgage cannot be reformed
on the ground of mistake when the evidence shows that the prop-
erty sought to be included by reformation was purposely omitted.

[As to the right to reform description in mortgage as against
purchaser without notice, see note in Ann. Cas. 1918D, 147.]

2. A mortgage of a building with the appurtenances covers the
land upon which the building stands and which is necessary to its
convenient and proper use.

3. A mortgage of a steam actuated pumping plant permanently
located upon and affixed to mining ground falls within the above
rule.

4. Failure to find the facts upon all of the material issues neces-
sitates a reversal of the cause.

5. When the complaint in an action to foreclose a mortgage
alleges that a certain sum is a reasonable attorney fee and this fact
is denied in the answer, and no evidence is introduced in support
of the issue thus raised, it is error to allow an attorney fee.

APPEAL from the District Court of the Second Judicial
District, for Idaho County. Hon. Edgar C. Steele, Presiding
Judge.

Action to reform and foreclose a mortgage. Judgment for
plaintiff. *Remanded for further proceedings.*

A. S. Hardy, for Appellants.

Without showing intention of mortgagor to include tract in
question in the mortgage and without showing mutuality of
the mistake, no reformation can be had. (*Houser v. Austin,*
2 Ida. 204, 10 Pac. 37; Pomeroy Eq. Jur., sec. 854; 34 Cyc.
915; *Woerner v. Woerner,* 171 Cal. 298, 152 Pac. 919; *Mc-*

*Guigan v. Gaines,* 71 Ark. 614, 77 S. W. 52; *Quiggle v. Vining,* 125 Ga. 98, 54 S. E. 74; *Wachendorf v. Lancaster,* 61 Iowa, 509, 14 N. W. 316, 16 N. W. 533; *Forester v. Van Auken,* 12 N. D. 175, 96 N. W. 301; *Anderson v. Freeman,* 88 Wash. 608, 153 Pac. 307; *Suksdorf v. Spokane etc. R. Co.,* 72 Or. 398, 143 Pac. 1104; *Darden v. Van Landingham* (Tex. Civ.), 189 S. W. 297; *Baker v. Pierce,* 197 Ill. App. 158; *Cherry v. Brizzolara,* 89 Ark. 309, 116 S. W. 668, 21 L. R. A., N. S., 508; *Williams v. Hamilton,* 104 Iowa, 423, 65 Am. St. 475, 73 N. W. 1029; *Tarbox v. Tarbox,* 111 Me. 374, 89 Atl. 194.)

The evidence must clearly show actual agreement to include the omitted tract and that both parties intended to and thought the mortgage was written differently than drawn. (*Houser v. Austin, supra;* Pomeroy Eq. Jur., sec. 859; *Weight v. Bailey,* 45 Utah, 584, 147 Pac. 899; *Clark v. Clark,* 141 Ga. 437, 81 S. E. 129; *Disbrow v. Disbrow,* 146 N. Y. Supp. 63.)

No attorneys' fees can be allowed in absence of pleading or proof of agreement to pay a fee and reasonableness of same. (*Lewis v. Sutton,* 21 Ida. 541, 122 Pac. 911.)

A conveyance of a mere building alone does not necessarily, and under the conditions existing in this case, imply any conveyance of the land upon which it stands. (*Hood v. Whitwell,* 66 Misc. Rep. 49, 120 N. Y. Supp. 325, 372.)

A conveyance of a building or barn used as a term of description will convey also the land upon which the building or structure may be erected. (Devlin on Deeds, sec. 1200; *Blake v. Clark,* 6 Me. 436.)

C. L. McDonald and Eugene A. Cox, for Respondents.

There can be no question relative to the intention of the parties to the mortgage to include therein the power plant. The trouble, if any, arose over the misdescription of the mining claim upon which the power plant was located.

"A mortgage of a building, such as a mill, store, or manufacturing plant, may cover, as appurtenant, land upon which it stands, and which is necessary to its proper use." (27

Cyc. 1143; *Esty v. Baker,* 50 Me. 325, 79 Am. Dec. 616; *Campbell v. Gilbert,* 57 Ala. 569.)

Everything essential to the beneficial use and enjoyment of the property designated in the conveyance passes to the grantee in the absence of language showing a definite intent. (*Sparks v. Hess,* 15 Cal. 186; *Pottkamp v. Buss,* 3 Cal. Unrep. 694, 31 Pac. 1121; *Dikeman v. Taylor,* 24 Conn. 219; *Maddox v. Goddard,* 15 Me. 218, 33 Am. Dec. 604; *Webster v. Potter,* 105 Mass. 414; *Snow v. Inhabitants of Orleans,* 126 Mass. 453; *Sharp v. Thompson,* 100 Ill. 447, 39 Am. Rep. 61.)

"The fact that the description of property is expressed only in broad, general terms, instead of being specific, will not necessarily invalidate it; such a description may afford the means of positive identification, and that is all that is necessary." (27 Cyc. 1087; *Broach v. O'Neal,* 94 Ga. 474, 20 S. E. 113; *Albertson v. Prewitt,* 20 Ky. Law Rep. 1309, 49 S. W. 196; *Rogers v. Miller,* 13 Wash. 82, 52 Am. St. 20, 42 Pac. 525.)

BUDGE, J.—On August 31, 1910, the United Placer Mines Company, a corporation of Oregon, made, executed and delivered to James Muckle and Charles Muckle its promissory note for the sum of $41,000, secured by a mortgage of the same date between the same parties upon the Gold Center, Ferry Bar, the Griswold, and the Squaw Bar placer mining claims, situated in Idaho county, "together with all buildings and improvements thereon and especially one steam actuated hydraulic power plant situated on the Ferry Bar claim above mentioned. Together with the tenements, hereditaments and appurtenances thereto belonging or in any ways appertaining; . . . . "

Some time thereafter and prior to the institution of this suit the United Placer Mines Company, an Idaho corporation, was incorporated as a reincorporation of the Oregon company.

On the 3d of April, 1913, a judgment was entered in the district court of Idaho county in favor of appellant, against the United Placer Mines Company of Oregon.

This action was commenced by James Muckle and Charles Muckle to foreclose their mortgage, and the two mining companies and appellant were made defendants. The mining companies defaulted. In the amended complaint, it is alleged that a portion of the Katie B. placer mining claim, containing 17.6 acres, together with the steam actuated pumping plant and buildings situated thereon, was by inadvertence and mistake left off the description of the real property mortgaged and intended by all the parties thereto to be mortgaged. This allegation is denied in the answer to the amended complaint and also in the cross-complaint. The cause was tried by the court, findings of fact and conclusions of law were filed, and judgment entered as prayed in the amended complaint, for reformation of the mortgage and the amount of the note, accrued interest, costs and $5,000 attorney fees. This appeal is from the judgment.

After the action was commenced, Charles Muckle died and his executors assigned his interest in the note and mortgage to respondent James Muckle, and the trial court upon application made an order substituting James Muckle as the sole plaintiff in the action. Appellant has sought to predicate error upon this proceeding. Without passing upon the merits of his contention, we are satisfied that this situation presents no error of which appellant may complain, since it in no way affects whatever rights he may have under his judgment, upon which his entire cause is based.

The only serious questions involved in the errors assigned are those arising over the reformation of the mortgage, the allowance of the $5,000 attorney fee, and the failure of the trial court to make findings on all of the material issues raised by the cross-complaint.

Appellant urges that the allegations in the amended complaint are insufficient upon the question of reformation, and that the proof upon this point is insufficient to justify a finding that a portion of the Katie B. claim, consisting of 17.6 acres, was left off the description in the mortgage by mutual mistake or that it was intended to include it therein.

The evidence shows the mortgage was drawn by the attorneys for the mortgagees, who were furnished a description of· the property to be included therein by one Hart, who was secretary of the United Placer Mines Company.  Hart was called and examined as a witness on behalf of respondent Muckle, and from his testimony it appears that it was the intention to mortgage the steam actuated plant and its appurtenances, but that at the time he gave the description to Muckle's attorneys he thought the plant was to be located on the Ferry Bar claim, which corners on the Katie B. claim. It further clearly appears from his testimony that the United Placer Mines Company never intended to mortgage the Katie B. claim or any part thereof as such.   On cross-examination, Hart testified:

"Q. In your deposition at Portland, I think about this 17 acres, you were asked this question: 'But you did not intend to mortgage it at this time?' and you gave this answer, did you not: 'No, because I could not.  I had nothing to mortgage.  The title wasn't vested in the company nor it wasn't vested in Sharp and King, because they had no patent to it. It was only by location they held.'

"A. I stated the same thing five minutes ago, again.

"Q. That answer is correct, is it?

"A. That answer is correct.

"Q. You were also asked this question, in your deposition: 'Would you say, if the company had any equity in the Katie B., which I am not stating one way or the other, state if there was any intention then to mention the Katie B. placer, or any part of the Katie B. placer, in the mortgage, for the reasons you have stated?' and you answered: 'There was no intention to mention anything about the Katie B. at the time this mortgage was taken on the property known as the United Placer Mines property; that is, generally speaking.  The United Placer Mines Company were the absolute owners of all property described in this mortgage, by holding a government patent to it, and they gave a mortgage to Muckle

Brothers for the amount of their indebtedness.' ₄Is that correct?

"A. That is correct; I answered it there, and I will answer it now."

The claims which were particularly described in the mortgage were patented claims. The Katie B. at that time was not patented but was owned as a possessory claim by the United Placer Mines Company, which had an undivided half interest, and Sharp and King, who each held an undivided one-fourth interest. Pursuant to an agreement between the company and Sharp and King, the latter as individuals patented the claim and later in 1913 deeded the 17.6 acres here in controversy to the company.

Without passing upon the sufficiency of the allegations in the complaint to justify the admission of proof of a mutual mistake, it is clear to us that the omission of the Katie B. claim from the description in the mortgage was not due to any mistake but that it was done intentionally, but respondent contends that in the absence of any reformation whatever the court was justified in decreeing the foreclosure of the mortgage on the power plant and the land upon which it was situated, regardless of the misdescription of the land. The rule is that a mortgage of a building with the appurtenances covers the land upon which the building stands and which is necessary to its proper use. (27 Cyc. 1143; *Sparks v. Hess,* 15 Cal. 186; *Dikeman v. Taylor,* 24 Conn. 219; *Maddox v. Goddard,* 15 Me. 218, 33 Am. Dec. 604; *Webster v. Potter,* 105 Mass. 414; *Snow v. Inhabitants of Orleans,* 126 Mass. 453; *Sharp v. Thompson,* 100 Ill. 447, 39 Am. Rep. 61.)

In *Sparks v. Hess, supra,* the supreme court of California, speaking through Field, C. J., said:

"The true doctrine we conceive to be this: That everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing to the grantee; or as observed by Mr. Justice Storey, in *Whitney v. Olney,* 3 Mason, 280, Fed. Cas. No. 17,595, 'the

good sense of the doctrine is that under the grant of a thing, whatever is parcel of it or of the essence of it or necessary to its beneficial use or enjoyment or in common intendment is included in it, passes to the grantee.' In that case Justice Storey held that by the devise of a mill and its appurtenants, not the buildings merely, but all the land under the mill, and necessary for the use of it and commonly used with it, passed to the devisees.''

The evidence shows that the United Placer Mines Company had but one steam actuated plant in Idaho and that it was located on the Katie B. claim, which corners on the Ferry Bar claim. It is clear that under the above rule the mortgage which described the plant was sufficient to cover the land upon which the plant stood and any other adjoining lands necessary to its convenient and proper use. The fact that the company did not have the legal title to this land at the time the mortgage was given is immaterial, for the subsequent acquisition of title by the mortgagor would immediately inure to the benefit of the mortgagee by operation of law. (C. S., sec. 6361.) But no evidence was introduced tending to show what portion of the 17.6 acres in controversy is necessary to the convenient and proper use of the plant. In view of the fact that appellant is relying upon a judgment which so far as the record discloses is a first lien upon all the lands of the company in Idaho county not covered by the mortgage, the point is a very material one.

The trial court having failed to find the facts upon all of the material issues raised by the cross-complaint, this alone would necessitate a reversal. (*Sarret v. Hunter, ante,* p. 536, 185 Pac. 1072.)

Upon the question of the attorney fee, it need only be said that the amended complaint alleged that $5,000 was a reasonable attorney fee, which fact was denied by the answer, and no evidence was adduced at the trial in support of the issue thus raised. The allowance of the attorney fee under such circumstances was clearly error.

Many other alleged errors have been urged, but they are not material to a proper disposition of the cause.

This cause is remanded, with instructions to the trial court to take evidence and make findings as to the quantity and description of land in the Katie B. claim necessary to the convenient and proper use of the pumping plant mentioned in the foregoing opinion, and as to the amount of a reasonable attorney fee for the foreclosure of the mortgage.   Costs are awarded to appellant.

Morgan, C. J., and Rice, J., concur.