320 P.2d 943

William J. CROUCH, Appellant,

v.

H. A. PIXLER and H. D. Pixler, dba H. A. Pixler & Son, Appellees.

No. 6542.

Supreme Court of Arizona.

Feb. 5, 1958.

Neil C. Clark, Phoenix, for appellant.

Stokes, Bagnall & Moring, Coolidge, for appellees.

JOHNSON, Justice.

This is an action filed by plaintiffs based upon a written contract whereby plaintiffs agreed to drill a well on the land of the defendant. Plaintiffs alleged full performance of the contract, an indebtedness of $2,500 due, and reasonable attorney's fees in accordance with the terms of the contract. Judgment was rendered in favor of the plaintiffs for the sum of $2,500 as damages for the breach of contract and $800 as attorney's fees, and from such judgment and order denying a new trial defendant appeals.

The written contract entered into between the parties was admitted in evidence during the trial, and the portions material to this appeal read as follows:

"3. That said well or wells shall be drilled to depth not to exceed 1,000 feet; when any well has been drilled to a depth of 800 feet then the owner may at any time before its completion stop further work thereon by notice in writing to the Contractor.

"5. It is understood by both parties that neither can tell just what will be found underneath the surface of the earth and that the work of the Contractor hereunder is subject to those conditions which he may find underneath the surface.

"8. As compensation, the Owner shall pay to the contractor for performing his part of this contract the following schedule of prices

"For drilling, casing, perforating, and sanding @ $15.00 per foot.
"said compensation to the Contract shall be paid as follows:

"$5000.00 to be paid on contract when well is 400 feet deep. Balance to be paid when well is completed.

"14. It is understood and agreed no good purpose would result from drilling rock formation in place and the Contractor will not be required to drill rock formation in place deeper than necessary to determine its character."

The plaintiffs were paid the sum of $5,000 upon completion of drilling to a depth of 400 feet, as provided in the contract, and continued drilling to a depth in excess of 500 feet when they stopped the drilling for the reasons hereinafter set forth, demanding the additional sum of $2,500 from

the defendants as full payment under the contract.

The first question presented is whether full performance of the contract is a matter of law for the court to construe or one of fact for the jury. The trial court submitted this question to the jury upon two special interrogatories:

Interrogatory No. 1:

"Did plaintiff fully perform all the requirements under the contract in a good and workmanlike manner?"

Interrogatory No. 2:

"If your answer to interrogatory No. 1 has been in the negative then what damages has the defendant or counterclaimant suffered as a proximate result of plaintiffs' failure to fully perform the requirements under the contract?"

The jury answered interrogatory No. 1 in the affirmative.

Defendant strongly urges there is no conflict in the evidence and that the trial court erred in submitting the issue of full performance of the contract to the jury. We have examined the evidence and the contract, and find several conflicts in the evidence as to the material issue of performance. The contract is unambiguous as to the undertakings of the plaintiffs which required that the well shall be drilled to a depth not to exceed 1,000 feet; or when the well was drilled to a depth of 800 feet the defendant had the right at any time before completion to stop further work upon giving notice; and it was agreed by the parties that no good purpose would result from drilling rock formation in place and the plaintiffs were not required to drill rock formation in place deeper than necessary to determine its character.

Plaintiffs' evidence established that acid igneous rock of a granitic nature was encountered at a depth of 495 feet and the defendant was informed thereof; and that the rock was test-drilled for several days, to an additional depth of 20 feet. The nature of the rock was corroborated by the testimony of a mineralogist for the Arizona Bureau of Mines at the University of Arizona, who described it as hard or solid rock and entirely different from a conglomerate formation. Plaintiffs then notified the defendant that they were not required under the contract to drill further, but they would do so if a new agreement was made based on an hourly rate. No new agreement was made and plaintiffs moved their equipment to another site.

Subsequently defendant successfully drilled and completed the well with his rotary rig, which is a different type than the churn drill used by plaintiffs. The defendant testified that as a result of his drilling the formation encountered was not rock in place but a conglomerate composed of cemented gravel and sand, and that some of it was hard and some of it soft.

314

■■■ It is apparent that an issue of fact was created as to whether plaintiffs had fully performed the contract when they ceased drilling upon encountering hard rock in place. There is no need to set forth in detail other conflicts in the evidence, but it will suffice to state from an examination of the evidence that clearly a conflict existed as to the manner in which the well was drilled, whether the hole drilled was in a straight line, and whether the well was perforated as provided in the contract. Consequently the case cited by defendant in support of the proposition that where there is no conflict in the evidence it then becomes a question of law for the court, has no application as we are of the opinion that there was a conflict in the evidence and the issues of fact were properly submitted to the jury. Matson v. Bradbury, 40 Ariz. 140, 10 P.2d 376; Collins v. Riverside Amusement Park Co., 61 Ariz. 135, 145 P.2d 853. Where the evidence is directly in conflict on a vital issue it is the function of the jury to pass on the facts. 88 C.J.S. Trial § 209.

■■■ We think defendant's next contention, that there can be no recovery for partial performance of a contract under an allegation of full performance, is without merit as plaintiffs could fully perform the contract by drilling to the terminal depth, or if they encountered rock formation in place then they were not required to go deeper than that required to determine the character of the rock. The fact that defendant subsequently drilled through the rock formation is immaterial. Unquestionably the insertion of paragraphs 5 and 14 in the contract was for the protection of the driller so they would not be required to drill in hard rock to an unknown and uncertain depth at the footage rate provided in the contract. Where the contract provided for an alternative termination of the contract, other than drilling the well to the terminal depth, then an allegation of full performance is proper and the evidence in support thereof cannot be construed as proof of partial performance or as an excuse for nonperformance.

■■■ Defendant complains of certain instructions given to the jury on the ground that no opportunity was given to either attorney, out of the hearing of the jury, to make objection to the instruction prior to the giving of them in accordance with 16 A.R.S. Rule 51(a), Rules of Civil Procedure. The trial court, after the close of instructions to the jury, asked if either party had any additions or if there had been any omissions in the instructions; no suggestion or objection was made. Such practice is not in compliance with Rule 51 (a), supra, and the trial court should have given the parties the opportunity to make objections out of hearing of the jury. Eldredge v. Miller, 78 Ariz. 140, 277 P.2d 239. However, we have examined the in-

structions and find no prejudicial error was committed. The trial court, in defining the issues, unwisely used and defined proximate cause in relation to damages arising out of the alleged breach of contract as set forth in the counterclaim. We do not think this misled the jury and believe it was harmless; nor was the effect of the court referring to paragraph 3 of the contract in general terms and the reading of certain other paragraphs verbatim prejudicial to the defendant because paragraph 3 of the contract, dealing with the terminal depth of the well to be drilled, was twice read in full to a witness, in the presence of the jury, and the entire contract was admitted in evidence and undoubtedly considered by the jury.

Finally, the defendant raises the question of the validity of the judgment allowing $800 attorney's fees. The complaint contained a claim for reasonable attorney's fees and the contract (paragraph 17) provided that

"In the event that this contract is placed in the hands of an attorney for collection then I agree to pay, in addition to the amount due hereon, a reasonable sum as and for attorney's fees."

The answer denied it was necessary for plaintiffs to employ an attorney to collect, and that there was nothing due and owing under the terms of the contract. The issue as to reasonable attorney's fees was not submitted to the jury, and no evidence was adduced as to the services rendered by the attorney or the reasonable value thereof.

The rule is firmly established that to enable this court to affirm a judgment of the lower court the record must disclose some positive and affirmative evidence in support thereof. Stoffelo v. Molina, 8 Ariz. 211, 71 P. 912; Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893. Nor is this rule of law waived as to attorney's fees as the courts generally hold that to justify a finding of reasonable attorney's fees there must be evidence in support of such finding. Mason v. Mason, 108 Utah 428, 160 P.2d 730; Muckle v. Hill, 32 Idaho 661, 187 P. 943; United States Fidelity & Guaranty Co. v. Zidell-Steinberg Co., 151 Or. 538, 50 P.2d 584, 51 P.2d 687; 7 Am.Jur., Bills and Notes, Section 142, p. 869.

We therefore hold that where an action is brought upon a written contract as in the present case, which provides that the defaulting party agrees to pay reasonable attorney's fees without specifying the amount, that it is error for the court to fix the amount of attorney's fees or submit the issue to a jury in the absence of proof determining what is a reasonable fee.

The judgment as to the $2,500 is affirmed, and reversed as to the $800 attorney's fees.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.