407 P.2d 930

**ELSON DEVELOPMENT CO., an Arizona corporation, Appellant,**

v.

**ARIZONA SAVINGS AND LOAN ASSOCIATION, an Arizona corporation in receivership, Appellee.**

**No. 8457.**

Supreme Court of Arizona.

En Banc.

Nov. 18, 1965.

Rehearing Denied Dec. 21, 1965.

Stockton & Hing, Phoenix, for appellant.

David J. Perry and Ralph G. Smith, Jr., Phoenix, for appellee.

McFARLAND, Justice.

Appellee, the Arizona Savings and Loan Association, an Arizona corporation in receivership, hereinafter designated as Arizona Savings, brought suit against the El-

son Development Company, an Arizona corporation, as principal defendant, hereinafter designated as Elson, and others to recover the balance due on a note, in the principal sum of $2,086,808.32—together with various items of interest, cost of suit, foreclosure search, taxes, and $88,000 in attorney's fees —and to foreclose a realty mortgage given by Elson to secure the payment of the money due on the note.

Elson filed an answer and counterclaim. Arizona Savings moved for a summary judgment on Elson's answer and counterclaim. The court granted the motion and entered judgment. It is from the judgment and the decree of foreclosure that Elson appeals.

The principal amount of the promissory note, dated April 9, 1959, secured by the mortgage, was in the sum of $2,700,000. The note provided that the entire unpaid balance should be due and payable on or before April 9, 1961. In September 1963, Elson being in default on payment of both principal and interest, entered into a supplemental agreement with Arizona Savings which provided, inter alia: that if Elson did not perform on or before December 15, 1963, certain obligations, to-wit—payment of certain interest, taxes and expenses—it would abandon the property. The material parts of the agreement are as follows:

"* * * will immediately abandon the property which is subject to the lien of the mortgage owned by ARIZONA,

and immediately after being served with process in a foreclosure action to be filed by ARIZONA in the Superior Court of Maricopa County, Arizona, ELSON will cause its attorney to prepare and file an answer in the said action on behalf of ELSON

"(a) Admitting that ELSON has abandoned the property subject to the said mortgage and admitting that the said property is not used for agricultural or grazing purposes.

\* \* \* \* \* \*

"(d) Admitting that ARIZONA is entitled to judgment against ELSON in the sums set forth hereinabove together with additional sums as interest for the period commencing December 1, 1963, plus the cost of a foreclosure search, court costs, taxes paid by ARIZONA, and a reasonable sum (not less than three (3%) per cent nor more than four (4%) per cent of the amount found by the court to be due and payable by ELSON to ARIZONA) as and for attorneys' fees. \* \* \*"

Elson did not perform in accordance with the supplemental agreement, and Arizona Savings filed its foreclosure action on January 10, 1964, seeking judgment for the sum of $2,086,808.32 plus six per cent interest from April 23, 1963, to August 31, 1963, and eight per cent interest from September 1, 1963, until the principal sum is paid;

$88,000 as reasonable attorneys' fees; $21,-688.26 as taxes; and various other sums. The complaint alleged that the premises, the subject of the mortgage, had been abandoned.

Elson, in its answer, denied that $88,000 was a reasonable attorneys' fee, and that any sum in excess of $1,000 would be reasonable; also specifically denied that the premises described in plaintiff's complaint had been abandoned by Elson. Elson also filed a counterclaim alleging that the agreement entered into in September 1963 was invalid for the reason that the directors did not have authority to enter into the same in that it, in effect, disposes of all the property of the corporation, and specifically alleged that the agreement to abandon the property was against public policy.

 The bases for the assignments of error of Elson are that there were issues to be determined by a trial, and that for this reason the court erred in granting Arizona Savings's motion for summary judgment.

The lower court, in a motion for summary judgment, does not try issues of fact, but only determines whether the same are genuine and in good faith disputed. Perez v. Tomberlin, 86 Ariz. 66, 340 P.2d 982. A motion for summary judgment is granted erroneously if on an examination of the entire record it is found that any disputed fact issue exists which could, if true, affect the final judgment. Arizona Coffee Shops v. Phoenix Downtown Park. Ass'n, 95 Ariz. 98, 387 P.2d 801; Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92.

Elson contends "that a genuine issue of fact to be tried existed by reason of the allegation * * * that $88,000 was a reasonable attorneys' fee to be recovered by the plaintiff in the foreclosure action * * *, and the denial * * * that a reasonable fee for plaintiff's attorneys amounts to the sum of $88,000.00 or any sum in excess of $1,000.00." The supplemental agreement of September 1963 provided for "a reasonable sum (not less than three (3%) per cent nor more than four (4%) per cent of the amount found by the court to be due and payable by ELSON to ARIZONA) as and for attorneys' fees." The judgment[1] in the instant case allowed an attorneys' fee of $88,000. $88,000 is

| 1. Principal amount | $ 2,086,808.32 |
| Interest on principal amount | |
| At 6% from April 23, 1963, through August 31, 1963 | 44,518.58 |
| At 8% from September 1, 1963, through March 31, 1964 | 98,775.55 |
| Foreclosure search | 142.50 |
| Property taxes paid | 21,856.96 |
| Interest on property taxes paid at 8% from January 8, 1964, through March 31, 1964 | 408.00 |
| Costs of suit | 46.75 |
| Attorneys' fees | 88,000.00 |
| TOTAL | $ 2,340,556.66 |

more than the three per cent minimum provided in the agreement but is slightly under the maximum of four per cent of the amount found by the court to be due and payable.

This court has long recognized the right of parties to a note to agree on the amount of attorney's fees, by providing that the same shall be fixed at a reasonable amount.[2] —a definite percentage of the amount recovered, or a specific amount.[3]

In the instant case Arizona Savings sought judgment for attorneys' fees in an amount more than the minimum of three per cent and slightly less than the maximum of four per cent. The denial of Elson that the amount alleged as reasonable in Arizona Savings's complaint put this question at issue to be determined by the court. In Crouch v. Pixler, 83 Ariz. 310, 320 P.2d 943, we stated:

> "* * * the courts generally hold that to justify a finding of reasonable attorney's fees there must be evidence in support of such finding. * * *
> "We therefore hold that where an action is brought upon a written contract as in the present case, which provides that the defaulting party agrees to pay reasonable attorney's fees without

specifying the amount, that it is error for the court to fix the amount of attorney's fees or submit the issue to a jury in the absence of proof determining what is a reasonable fee." 83 Ariz. at 315, 320 P.2d at 946.

The agreement in the instant case which provided for a reasonable sum—not less than three per cent nor more than four per cent—was indefinite as to the exact amount between three and four per cent which would be reasonable. Under the holding of this court in Crouch v. Pixler, supra, evidence was required to determine the amount of a reasonable attorney's fee.

There is also the question raised by Elson's answer, which denies any attorneys' fees over a thousand dollars is reasonable, as to whether the court, in fixing the attorney's fees, should fix it within the limits of three to four per cent. In the case of Owens v. Conelly, supra, we said:

> "By Assignment No. 3 it is claimed that the note is usurious because it contains this clause:
>
> > " 'In case counsel is employed I agree to pay as counsel fees an amount equal to 10% of the amount found to be due at the date of collection.'
>
> * * * * * *

2. Steele v. Vanderslice, 90 Ariz. 277, 367 P.2d 636; Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R.2d 668; Federal Land Bank of Berkeley v. Warner, 42 Ariz. 201, 23 P.2d 563, reversed on other grounds, 292 U.S. 53, 54 S.Ct. 571, 78 L.Ed. 1120.

3. Owens v. Conelly, 77 Ariz. 349, 272 P.2d 345; Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334; Maxey v. Somerton State Bank, 22 Ariz. 371, 197 P. 894; Estate of Amirault, 22 Ariz. 122, 194 P. 1099; cf. Pioneer Constructors v. Symes, supra.

"We quote from Citizens Nat. Bank of Orange, Va. v. Waugh [4 cir.], 78 F.2d 325, 329, 100 A.L.R. 939:

" 'We come, then, to the question as to whether the provision for a 10 per cent. attorney's fee for collection in case of default in the payment of a promissory note is to be condemned as contrary to the policy of the law; and we think that this question, nothing else appearing, must be answered in the negative. Of course, if it should appear that a particular provision were used as a mere cloak for usury or that the provision were for so large an amount or were of such a character as to show an intention to provide a mere penalty for nonpayment, a different question would be presented, and it might well be condemned as in conflict with the well-settled policy of the law. But, where the provision is reasonable in amount and legal services are required and are actually rendered in the collection of the instrument, we can think of no consideration of public policy which should condemn it. * * * ' " 77 Ariz. at 354, 272 P.2d at 348.

The case of Citizens National Bank of Orange, Virginia v. Waugh, 4 Cir., 78 F.2d 325, 100 A.L.R. 939, from which we quoted

with favor in the Owens case, supra, also passed upon the question in the instant case, as follows:

"In the light of these decisions and the overwhelming weight of authority in the state courts, we hold the rule to be (1) that a provision in a promissory note for the payment of attorneys' fees for services actually rendered in collection is not to be condemned as contrary to public policy, if reasonable in amount and not used as a cloak for usury or other forbidden transaction; (2) that such a provision is enforced as a *contract of indemnity* and the amount stipulated therein is not absolutely binding on the parties or on the court, but will be enforced to the extent that it provides for a reasonable attorneys' fee for services actually rendered in accordance with its terms; and (3) that, where services have been rendered and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern." 78 F.2d at 331.

While one line of authorities holds that the amount stipulated in the note is valid and binding in regard to attorney's fees, there is another line of cases holding that while they are valid they are nevertheless enforceable only to the extent that the amount stipulated is reasonable.[4]

---

4. For cases see Citizens Nat. Bank of Orange, Va. v. Waugh, 4 Cir., 78 F.2d 325, 100 A.L.R. 939; also cases collected in 17 A.L.R.2d 288.

■ We are of the opinion that the better rule is set forth in Citizens Nat. Bank of Orange, Va. v. Waugh, supra—that a provision in regard to a definite amount of attorney's fees, or a per cent of the amount found due on a note for attorney's fees, is binding only to the extent that it is reasonable; however, where the services have been rendered, and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern. When—as in the instant case—the reasonableness of the amount is denied, then the court must from evidence and the record determine and fix a reasonable amount for the attorney's fees.

■ We hold that, in the instant case as to the three per cent stipulated in the agreement, it is not absolutely binding on the parties, or on the court, and the stipulation of three to four per cent as reasonable attorney's fees is binding only in the amount that the court finds to be reasonable from evidence.

Elson next contends "that a genuine issue of fact to be tried existed by reason of the allegation * * * of the complaint * * *, that the mortgaged premises had been abandoned by Appellant and the denial in * * * the answer * * *, that the mortgaged premises had been abandoned." The Arizona revised statutes, as amended in 1963, provide, in part:

"§ 12–1282. Time for redemption

"A. The judgment debtor or his successors in interest may redeem at any time within thirty days after the date of the sale if the court determined as part of the judgment under which the sale was made that the property was both abandoned and not used primarily for agricultural or grazing purposes.

"B. The judgment debtor or his successor in interest may redeem at any time within six months after the date of the sale except when the court has made the determinations as provided in subsection A. * * *"

The statute provides that the court must determine if in fact there has been an abandonment. In the instant case had the issue of abandonment been tried by the court, and Arizona Savings relied solely on the introduction of the agreement to abandon, and Elson presented evidence showing that as a matter of fact it had not abandoned the premises, the court would have had to determine that the property had not been abandoned, under A.R.S. § 12–1282, subsec. A, supra. Arizona Coffee Shops v. Downtown Park. Ass'n, supra; Sarti v. Udall, supra.

■ Elson, in its counterclaim, alleged that the September 1963 agreement, wherein it provided for an abandonment, was against public policy and contrary to the law of Arizona. This agreement was, in effect, a partial waiver which shortened the redemption period as provided in A.R.S.

§ 12–1282, subsec. B, supra. Redemption statutes are enacted in the interest of public policy. Dipple v. Neville, 82 Mont. 280, 267 P. 214. Agreements to waive declarations of public policy are necessarily void. Ross v. Ross, 96 Ariz. 249, 393 P.2d 933; Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876; Olsen v. Union Canal & Irr. Co., 58 Ariz. 306, 119 P.2d 569. The question thus presented is the validity of an agreement to abandon which in effect is a partial waiver of the time period for redemption. A.R.S. § 12–1282, subsec. A, supra, was enacted to prevent deterioration of property where a mortgagor in default has vacated the premises. The shortening of the period for redemption in cases of abandonment is therefore to prevent a loss from deterioration during the redemption period. In Commercial Savings and Loan Ass'n v. Curts, 187 Kan. 18, 354 P.2d 86, the court, in reference to a redemption statute similar to A.R.S. § 12–1282, subsec. A, stated:

> " 'The great preponderance of the evidence showed the premises to be unoccupied, the farm residence vacant, and many of its windows broken, and its foundations undermined, the arable land idle and untilled, the windmills dismantled, the barns and outbuildings collapsed or collapsing, and that they had no appearance of being in the possession of any *bona fide* caretaker. To meet such conditions, the legislature

wisely limited the redemption to 6 months, and the present case was a proper one for the application for the 6 months' rule.' " 354 P.2d at 89.

In the instant case there was an effort to reduce the statutory redemption period by the agreement to abandon. Such agreements would mean that the redemption period would end at a time when the mortgagor might be least able to make redemption. The mortgagee could thereby secure title to the property by bidding less than the amount of the judgment, and less than the real value of the property, thereby defeating the purpose and intent of the provisions of the statutes providing for redemption periods.

The intent and purpose of the statute providing for redemption cannot be violated by an agreement. The object of the redemption statute is to give to the mortgagor time to pay his obligation and avoid the loss of his property. In the case of Skach v. Sykora, 6 Ill.2d 215, 127 N.E.2d 453, 52 A.L.R.2d 1320, the court, in discussing the purpose of the redemption period, stated:

> "The purpose of a mortgage foreclosure is to enforce the payment of the mortgagor's debt. The purpose of the redemption statute is to give the debtor time and opportunity to avoid the loss of his property and to give his other creditors an opportunity to collect their debts from any surplus

over the mortgage debt. The statutes are not intended to take the landowner's property unjustly or for an inadequate consideration. They are not intended to penalize the debtor for his default nor to reward the purchaser by unjust enrichment above the amount of his debt at the expense of the landowner and his other creditors. The statute protects the purchaser to the extent of his bid, costs and interest on his investment. The statute contemplates redemption where the value of the property exceeds the sale price. The purchaser knows this when he makes his bid, whether he is the mortgagee or a stranger, and when he is repaid all that the statute allows upon redemption, that is all he is either legally or equitably entitled to receive. As was said in Hruby v. Steinman, 374 Ill. 465, 30 N.E.2d 7, 10, citing Phillips v. Demoss, 14 Ill. 410, 'That he [the purchaser] may be deprived of a deed will not avail him, as his right to the land is no higher or more sacred than to the redemption money, and the statute holds out no inducements for a speculation at a sheriff's sale, beyond the interest provided for the use of the purchase money.' These being the purposes of a redemption statute a court of equity would not be justified·in attaching a rigidity to its language which carried

it beyond that purpose to work inequities." 127 N.E.2d at 456.

In Mace v. Norwood, 155 Kan. 302, 124 P.2d 497, the court—in discussing a subsequent agreement whereby the mortgagor, as additional securities for its mortgage, executed an assignment of the rents of the property to the mortgagee, the consideration set forth in the agreement being that the mortgagee withhold foreclosure of said mortgage under the conditions set forth in the agreement—stated:

" 'This rent assignment is given * * * in consideration of the fact that the said mortgage * * * is in default and subject to foreclosure, and the' mortgagee 'has agreed * * to withhold foreclosure of said mortgage upon the performance of the obligations under said substitution agreement.'

: * * * * * *

"Appellant argues that to permit defendant to recover in this case would be to violate the spirit of our mortgage redemption law and the purpose of the legislature in enacting it. We think the point is well taken. The redemption law was designed to protect the debtor by permitting him to redeem at the price at which the property sold. Fraser v. Seeley, 71 Kan. 169, 172, 79. P. 1081. Any agreement written into a mortgage which attempts to bar the

right of the mortgagor to redeem is contrary to the purpose of the act and is invalid. While the legislature did not specifically legislate against the plan used by defendant to get the rents of the property during the period of redemption fixed upon the foreclosure of his mortgage, we think it is contrary to the fundamental purpose and intent of the statute." 124 P.2d at 499.

The reasoning in the Mace case, supra, is applicable to the instant case. In that case there was an attempt to alter statutory rights during the redemption period by giving the mortgagee the rents during that period. The court ruled that such an agreement was invalid on the grounds that an agreement written into a mortgage which would bar the right of the mortgagor to redeem was contrary to the act, and invalid. Hence, an agreement after default which would alter the rights of the mortgagee during such redemption period was invalid. In the instant case, the attempt was to alter the rights during the redemption period by an agreement to abandon, the effect of which was to give the mortgagee possession and title to the property five months earlier than provided in A.R.S. § 12–1282, subsec. B.

In the instant case the facts are different from those where the mortgagee purchases the mortgaged premises by a fair contract entered into after the mortgage is given, or where a purchaser under contract to convey sells his interest by fair contract to the contractor. A conveyance of mortgage realty by mortgagor to mortgagee in satisfaction of mortgage indebtedness, if made fairly and without fraud, oppression, or undue advantage being taken by mortgagee is not against public policy. The same is true of a conveyance by a purchaser under contract to the contractor. In the case of Stallings v. Little, 191 Okl. 399, 130 P.2d 525, the court, in holding a sale by mortgagor to a mortgagee was valid in Oklahoma because of a statute which provided that no realty shall be sold for payment of any money or performance of any contract in security for which it may have been pledged or assigned except in pursuance of a judgment of a court of competent jurisdiction under such sale, stated:

"* * * 'there is no legal inhibition on a mortgagor selling the mortgaged property to the mortgagee in satisfaction of his debt' although this statute was not referred to. Similar statutory provisions are found in many of the states. 41 C.J. 833, § 1012. The plaintiff refers us to no decision construing this or a similar statute to prevent the mortgagee from purchasing the mortgaged premises by a fair contract entered into after the mort-

gage is given. * * *" 130 P.2d at 527.

There are even greater reasons for holding that agreements to abandon property—and thereby shorten the time of redemption—to be against public policy than in other types of agreement because abandonment leaves the property unprotected and subject to deterioration and vandalism, and even a possible menace to public safety. To hold otherwise would be to open the door for such agreements, which would result in the beneficial use of such property being lost to the people of our state during the time of such abandonment.

We therefore hold the agreement to abandon the property was invalid and against public policy, and that the pleadings presented an issue to be determined by the lower court as to whether the property was in fact abandoned. It is not necessary to pass upon other questions raised by Elson in its brief.

For the reasons stated, the judgment is reversed, and the case remanded for proceedings not inconsistent with this opinion.

STRUCKMEYER, V. C. J., BERNSTEIN and UDALL, JJ., and IRWIN CANTOR, Judge, concurring.

(Chief Justice LORNA E. LOCKWOOD having disqualified herself, Judge IRWIN CANTOR served in her stead.)